No. 22,325.

SAM E. REYNOLDS, as Administrator of the Estate of ALICE M. McCOLLUM, deceased, *Appellee*, v. THE METROPOLITAN LIFE INSURANCE COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. INDUSTRIAL INSURANCE — *Default in Payment of Premium — Thirty Days' Written Notice Required to Forfeit or Cancel Policy.* The provision of section 1 of chapter 212 of the Laws of 1913 (Gen. Stat. 1915, § 5292), making it unlawful for any life insurance company, other than fraternal, doing business in the state, to forfeit or cancel a policy on account of the nonpayment of premiums, without first giving notice in writing to the holder of any such policy of its intention to forfeit or cancel the same, is held to include industrial policies issued upon the payment of monthly or weekly premiums.

2. SAME—*Provision in Policy Waiving Statutory Written Notice Void.* The policy of insurance sued on was an industrial policy, which made it the duty of the company's agent to call upon the insured on Monday of each week to collect a weekly premium of 25 cents. Printed upon the policy with a rubber stamp was a provision as follows:

"The insured under this policy, by the acceptance thereof, expressly waives, both for himself and for any other person who has now, or who may subsequently acquire any interest herein, the giving of any notice provided for by chapter 212 of the Laws of 1913 of the state of Kansas, and consents that said policy may be lapsed or forfeited for nonpayment of premium as herein provided."

*Held*, that this provision of the policy was void.

3. SAME—*No Mutual Agreement to Cancel or Abandon Policy.* On the facts stated in the opinion, it is held that the insured and the insurance company had not by mutual agreement abandoned and canceled the policy, and that it was in full force and effect at the time of the death of the insured.

Appeal from Clay district court; FRED R. SMITH, judge. Opinion filed December 6, 1919. Affirmed.

*George T. McDermott, Robert L. Webb,* both of Topeka, *Robert Stone,* and *E. H. Gamble,* both of Kansas City, Mo., for the appellant; *William J. Tully,* of New York, N. Y., and *H. O. Caster,* of Bartlesville, Okla., of counsel.

*C. Vincent Jones,* of Clay Center, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The action is upon a policy of life insurance. From a judgment sustaining a demurrer to its answer, the insurance company appeals.

In May, 1915, the appellant issued an industrial policy upon the life of Alice M. McCollum, and agreed in case of her death to pay to her executor or administrator the sum of $200. The particular kind of policy made it the duty of the company's agent to call upon the insured on Monday of each week and collect a weekly premium of 25 cents. It was provided in the policy that, "If any premium shall not be paid when due, this policy shall be void." After the first premium, a grace of four weeks was granted for the payment of premiums, "during which time the insurance shall continue in force." In the same clause there was a provision that,

"If death occur within the days of grace, the overdue premiums shall be duducted from the amount payable hereunder, but neither this concession nor the acceptance of any overdue premiums shall create an obligation on the part of the company to receive premiums which are in arrears over four weeks."

The insured died on May 22, 1917. The last payment of premiums was made March 19, 1917, and the next payment was due on the 26th of that month. At the time the policy was written, chapter 212 of the Laws of 1913 was in force, with this provision:

"It shall be unlawful for any life insurance company other than fraternal doing business in the state of Kansas to forfeit or cancel any life

Reynolds v. Insurance Co.

insurance policy on account of the nonpayment of any premium thereon, without first giving notice in writing to the holder of any such policy of its intention to forfeit or cancel the same." (Gen. Stat. 1915, § 5292.)

In the petition it was alleged that for the purpose of avoiding the effect of this statute the appellant, in violation of the laws of the state and against the public policy of the state, had stamped upon the insurance policy, with a rubber stamp, the following:

"The insured under this policy, by the acceptance hereof, expressly waives, both for himself and for any other person who has now, or who may subsequently acquire any interest herein, the giving of any notice provided for by chapter 212 of the Laws of 1913 of the state of Kansas, and consents that said policy may be lapsed or forfeited for nonpayment of premium as herein provided."

The petition was drawn upon the theory that this provision of the policy was void. The appellee, therefore, contended that the four weeks of grace carried the policy to and including April 23, and that the earliest date the appellant could have mailed a written notice was April 24, and that, under the statute, the earliest date it could have forfeited the policy was 30 days thereafter, which was May 25, 1917, and that, the death of the insured having occurred three days before May 25, the policy was still in force.

The appellant makes the following contentions:

"I. That chapter 212, Session Laws of 1913, being sections 5292 and 5293 of the General Statutes of 1915 for the state of Kansas, does not apply to industrial policies—the class of policy upon which this suit is based.

"II. That if chapter 212, Session Laws of 1913, ever had any application to this class of policy, the force and effect of that statute has been waived and set aside by the original contract of the parties.

"III. The parties by their own acts and by mutual agreement have abandoned and canceled the policy."

The principal contention is that the statute of 1913 does not apply to industrial policies. The argument is that the ordinary life insurance policy provides for a premium payable annually, semiannually, or quarterly, and that under any one of these three methods it often happens that the exact date when payment is due escapes the memory of a policyholder, the notice being often laid aside and forgotten and the time allowed to slip by without making the payment; that the holder has a vested interest in an ordinary policy, and because of the great

importance to him that it should not lapse, the statute was enacted requiring 30 days' notice after the payment becomes due before the policy can be lawfully canceled by the company; and that by reason of the peculiar character of industrial policies, the legislature could not have had them in mind when the law was passed. It is said:

"The assured's attention was called every week to the fact that premium was due; and this was done by the representatives of the insurance company in person."

In this connection it is urged that the appellant alone has in force in this state more than 118,000 policies of this peculiar kind, and that a very large percentage of the policyholders are in the habit of getting in arrears in the payment of their premiums. It is urged that the application of the statute to this class of policies might require the company to mail fifty-two written notices a year advising a policyholder of its intention to cancel his policy, and that this would be unreasonable and extremely burdensome. It is said that the industrial policyholder already pays in his premium for the service of a personal collector calling every week to remind him that his premium is due, and to collect the premium; that this personal service, more efficacious than any written or printed notice sent by mail, is already included in the present cost of the policy, and that to add the unnecessary expense of sending written notices by mail would not benefit the policyholder, but, on the contrary, would be reflected in the decreased earnings of the industrial insurance companies, and in the end return upon the policyholder himself. While these considerations furnish a forceable argument against the expediency of a law that would require industrial insurance policies to give such a notice, they furnish no assistance to the court in arriving at the true interpretation of the plain language of the statute. The statute is broad and sweeping. The title reads:

"An act to prevent the cancellation or forfeiture of life insurance policies, without notice."

The language of the first section, that "It shall be unlawful for any life insurance company other than fraternal doing business in the state, etc.," shows that the legislature had in mind the exclusion of certain kinds of life insurance; and the fact that it expressly excludes from its provisions "fra-

ternal" life insurance companies, and fails to exclude "industrial" policies, is an argument against the construction that it was the intention to exclude from its operation any other than "fraternal" insurance companies.

In *Priest v. Life Association,* 99 Kan. 295, 298, 161 Pac. 631, the conclusion was reached that the Kansas statute was based on the New York statute, "only in the sense that the same general legislative subject is dealt with, and New York acted first." (p. 300.) It is, perhaps, of some significance, however, that the New York statute expressly excludes from its operation life insurance policies "issued upon the payment of monthly or weekly premiums," and there is some force to the contention of the appellee that with the New York statute before it our legislature appears to have acted with deliberation in leaving out the exception of "industrial" policies, although its attention was directed to the matter of the difference in the character of insurance policies, as appears by its express exclusion of "fraternal" insurance companies. The conclusion we have reached is, that notwithstanding the obvious hardships imposed upon industrial policies of insurance by the provisions of the statute, the statute itself can bear but the one interpretation, and that to follow appellant's interpretation would require the court to depart from its judicial functions and to place an exception into the statute which the legislature did not see fit to do.

The second contention, that the force and effect of the statute has been waived and set aside by the original contract of the parties, does not seem to be insisted upon very strenuously by the appellant. It is sufficient answer to the contention to say that the broad terms of the statute would seem to forbid the parties to the contract from stipulating upon a clause in the policy in contravention of the statute. So far as the statute is indicative of a public policy, its provisions must be regarded as mandatory, and as not subject to waiver by reason of any provision in the policy itself. To hold otherwise would make the efficacy of the statute depend entirely upon the terms of the policy of insurance, and, manifestly, the insurance companies would refuse to issue contracts of life insurance that did

43—105 KAN.

not contain a provision in evasion of the statute. The legislature could not have intended that the public policy, which is the primary purpose of the act, should be made to depend upon the contract between the parties.

The third contention is, that the parties by their own acts and by mutual agreement have abandoned and canceled the policy. This defense was set out in the answer, in substance, as follows:

After the insured quit paying premiums, appellant's agent called upon her each Monday for four consecutive weeks seeking to collect the premium, and orally notified her and her sister, who was her agent, that the policy would lapse unless the premiums were paid, and that upon the day when the policy would lapse by its terms for the nonpayment of premiums, the agent orally notified them that unless the premium was paid the policy would lapse at midnight of that day; that thereafter he called upon the insured and her sister and sought to have the policy reinstated by the payment of the premiums, and they both replied that they did not wish longer to carry the insurance; whereupon the policy was lapsed by the mutual agreement of the insured and the agent of the appellant. We have examined the cases cited in support of the contention. In our opinion, none of them apply to the situation presented by the facts in this case, for the reason that the four weeks of grace kept the policy in force to and including April 23; and, therefore, the earliest date the appellant could have mailed a written notice was April 24, and since the insured died three days before the expiration of the 30 days from the time notice under the statute must have been mailed, it was in force at the time of her death.

No notice had been given under the statute, and the policy had not, in fact, lapsed. Besides, the statement of the insured that she did not wish longer to carry the insurance, made at a time when she still had an interest in it, and still retained the policy itself, must be construed to mean that she did not intend to make further payments of premiums, but retained whatever interest she had in it according to its terms, which, regardless of what she may have believed, included a provision requiring the giving of 30 days' notice of an intention on the part of the appellant to forfeit the policy. It is clear, too, that

Eikelberger v. Insurance Co.

the statement in the answer that upon the date the policy would lapse by its terms for the nonpayment of premiums the agent orally notified the insured that the policy would lapse at midnight of that day, was predicated upon the appellant's interpretation of the policy. The statute requiring the giving of a written notice was a part of the policy, and the oral notice given the insured could not change the terms of the policy. The oral notice was given upon the mistaken theory of the appellant that the statute did not apply.

The judgment is affirmed.