No. 29,312.

Martha Wegner, *Appellant,* v. The Federal Reserve Life Insurance Company, of Kansas City, *Appellee.*

(287 Pac. 591.)

Opinion filed May 3, 1930.

C. A. Leinbach, of Onaga, for the appellant.

Hugh T. Fisher, Irwin Snattinger, E. B. Smith, all of Topeka, William R. Baker, E. H. Henning, both of Kansas City, and E. C. Brookens, of Westmoreland, for the appellee.

The opinion of the court was delivered by·

DAWSON, J.: This was an action by Martha Wegner to recover on two $10,000 insurance policies which defendant had issued to her husband, the late Frank Henry Wegner, of Onaga.

The controlling facts were these: On September 16, 1926, defendant executed and delivered to Wegner a policy of life insurance, No. 10761, for $10,000, payable to this plaintiff in the event of his death, upon certain conditions stated in the contract. Wegner paid the first annual premium, $506.90, but did not pay the succeeding annual premium due September 16, 1927. On September 10, 1927, defendant notified Wegner that unless the premium was paid by October 17, 1927, the policy would be canceled. Wegner ignored this notice, and the matter remained in that situation until Wegner's death, which occurred on March 21, 1929.

In the first count in this action plaintiff seeks to recover on the above-mentioned policy.

On October 7, 1926, about three weeks after getting the policy referred to above, Wegner obtained a second policy for $10,000, numbered 10804, similar to the first in tenor and conditions. He paid the first premium thereon, $506.90; and about a year later, October 27, 1927, he likewise paid the second annual premium, $506.90. On September 14, 1928, defendant notified Wegner that the third annual premium would be due on October 7, 1928. It also advised him that he had participation dividends amounting to $108.28, and that the balance due on the third year's premium would be $398.62. In response thereto, on November 3, 1928, Wegner sent defendant his check for $126.72, which was received and credited to Wegner's account on policy No. 10804. On January 14, 1929,

at 4:30 p. m., defendant mailed to Wegner a letter dated a week earlier, which read:

"Exhibit C.

"January 7, 1929.

"Policy No. 10804.     Premium $134.30 2d qr.
                                    $7.58 bal. 1st qr.
                                  $141.88 Total amt. due.

Due January 7, 1929.

"Mr. Frank H. Wegner: . . . In accordance with the insurance laws of the state of Kansas, and the terms of your policy, above described, we wish to notify you that the policy will be canceled if settlement is not received on or before February 7, 1929."

Wegner made no response to this letter, and this situation of the contracting parties did not change until Wegner's death nine weeks later.

Defendant's refusal to pay on this policy constitutes plaintiff's second cause of action.

Certain provisions of the policy contract were stressed in the trial below which will require our consideration here. These read:

"Premiums. All premiums are due and payable annually in 'advance. . . . After the first year, premiums . . . may be paid annually, semiannually or quarterly, . . . as follows: Annual premium, $506.90; semiannual premium, $263.60; quarterly premium, $134.30. Except as herein provided, the payment of a premium or any installment thereof shall not maintain this policy in force beyond the date when the next premium or any installment thereof becomes due and payable, and if any premium be not paid when due, according to the terms of this contract, this policy shall cease and determine and all premiums previously paid shall be forfeited to the company, unless otherwise expressly provided herein. . . .

"Grace in Premium Payments. After the first annual premium shall have been paid, a grace of one month will be granted for the payment of every premium, during which time this policy shall continue in force, subject to deduction of the premium for the current policy year.

.   .   .   .   .   .   .   .   .   .   .   .   .

"Annual Dividends. At the end of the second policy year, provided the full annual premium for the third policy year shall have been paid, and annually thereafter, if the full annual premium to the end of the next policy year shall have been paid, this policy will be credited with such dividends as may be apportioned by the board of directors of the company. Dividends thus credited will be paid in cash, or, at the option of the insured, will be applied either in reduction of premiums, or upon the addition or accelerative endowment plan.

"Participation. The policies written in, and forming this class, collectively, shall be analyzed as to mortality savings in this class . . . ; and then the policies written in, and forming, this class shall be credited annually with a

certain sum of money; . . . ; the basis of the calculations shall be as follows, to wit: The said fund shall be the equivalent of one dollar a thousand for each one thousand dollars of participating life insurance which shall have been written, and paid for in cash, during the previous year in the company's ordinary department, . . . and there shall enter into these calculations the renewal of that business, written for the said period of ten years, . . . but no renewal shall count until, nor unless, the premiums on the policies so renewed shall have been paid in cash. The said fund thus created shall be derived from the premiums paid on policies in this class and not from premiums paid on policies in any other class nor from premiums paid on any other policies; the said fund shall be divided annually among the persistent premium-paying policyholders in this class, and accordingly, the said fund shall be allocated, apportioned, and distributed to the policies in this class, individually, and the proportionate part of the said sum derived, as aforesaid, shall be credited to, and shall be deducted from the annual premium on this policy, so long as this policy shall continue in force by the payment of premiums thereon in cash; . . ."

The cause was submitted to the court upon the pleadings and on agreed statement of facts summarized as above and including the following:

"14. That on October 27, 1927, the date upon which Frank Henry Wegner paid the second annual premium on policy No. 10804, there was due him the sum of $54.82 as a participation dividend, which dividend was improved at 3½ per cent interest, said interest amounting to $1.92 on October 7, 1928, which dividend and interest belonged to Frank Henry Wegner, and could have been used by him to pay the balance due on the first quarterly premium, and a part of the second quarterly premium, and said sums are due the plaintiff.

"15. If the insured was entitled to any participation dividend on policy No. 10751 on September 16, 1927, that dividend was $54.82.

"16. If the insured was entitled to any participation dividend on policy No. 10804 on October 7, 1928, that dividend was $51.54. This is a different dividend than that mentioned in No. 14.

"17. The defendant did not notify Frank Henry Wegner of the amount of the dividends as covered by these agreed statements of facts, other than letter dated October 7, 1928, a copy of which is as follows:

. . . . . . . . . . . . . . . .

"'$506.90
Participation div. Oct. 7, 1928 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 108.28

Balance due . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $398.62

"'MR. FRANK H. WEGNER: . . . We wish to advise you that the premium on your policy, as above described, fell due to-day.

"'Although there is a period of grace in which to pay it promptly on due date, otherwise the policy may lapse.'"

The trial court gave judgment for defendant on both counts, and plaintiff appeals.

The legal questions involved in the first count are simple and

readily disposed of. Wegner had an insurance policy, No. 10751, for $10,000, for which he paid the first annual premium of $516.90. This insured his life for one year, and because of the leniency of the statute as well as by the grace period of the contract itself, defendant's liability extended for thirty days in addition to the year for which he had paid. Wegner was notified by defendant on September 10, 1927, that unless he paid by October 17, 1927, his policy would be canceled. He did not pay. The statute in force at the time this policy was written (Laws 1925, ch. 184), as well as the later act which superseded it (Laws 1927, ch. 231, §§ 40-410, 40-411), did not forbid the cancellation of an insurance policy with or without notice where the default in payment of premium has existed for over six months. What, then, is the basis for plaintiff's claim on this policy? It rests on the theory that because defendant did not notify Wegner that he was entitled to a credit of $54.82 under the participation clause quoted above he owed nothing and was not bound to pay anything until he was so notified. The terms of the contract are not susceptible of such an interpretation. The participation clause is verbose and complicated in its text and meaning, but one feature of it which stands out clearly is that the money to be accumulated under this participation clause is only to be divided annually "among the persistent premium-paying policy-holders" of the class of persons holding this particular kind of policy. One who pays a single premium and no more cannot be characterized as a "persistent premium-paying policyholder." Defendant reads and construes the annual-dividend clause and the participation clause together and argues therefrom that the insured was not entitled to these credits until he had paid the third annual premium. Whether that contention is correct or not, this court cannot discern that plaintiff has any standing whatever to recover on the first cause of action.

The legal questions involved in the second cause of action are not so easily disposed of. The term "persistent paying policyholder" is novel, but manifestly it must mean a policyholder who persists in paying his insurance premiums, one who does not neglect to do so, who does not let his policy lapse for nonpayment. So far as concerns policy No. 10804, Wegner did persist in paying premiums due thereon. He paid the second annual premium somewhat belatedly, but it was accepted. To that extent he was a persistent premium payer. It was stipulated by the litigants that, having

persisted in paying the second year, he was entitled to a credit of $54.82 on his first year's premium payment under the participation clause, which accumulated $1.92 as interest up to October 7, 1928, at which time the aggregate of that principal and interest, $56.74, could have been applied on the payment of the third annual premium. At that time, also, Wegner had a right to a second annual credit under the participation clause, agreed to be $51.54; and this sum also was available to reduce his third annual premium, if he had chosen to pay it. The total of these two credits is $108.28, but the contract does not intimate that the insured had a right to have them applied on a quarterly premium. On the contrary, the participation fund was to be "divided annually," and "shall be credited to and shall be deducted from the annual premium." Wegner chose not to pay the third annual premium in full, less the credits due him ($506.90 less $108.28 leaves $398.62), as notified by defendant in its letter of October 7 set out above. On November 3, 1928, he paid only $126.72, which was accepted and credited as a partial payment on the first quarterly premium for the third year. Defendant wrote to Wegner to that effect on January 14, 1929—the letter marked "Exhibit C," dated January 7. Wegner had the privilege of paying any annual premium after the first in quarterly installments. A quarterly installment was somewhat higher than the precise one-fourth of the annual premium—not an unreasonable requirement. Wegner's remittance of $126.72 on November 3, 1928, was obviously calculated on one-fourth of the annual premium, whereas by the terms of the policy, if he chose to pay in quarterly installments, he should have remitted $134.30. Obviously Wegner did not regard himself as entitled to use the participation credits on a mere quarterly installment, or he would not have remitted as much as he did. He paid what he conceived to be one quarterly installment, and he acquiesced in that construction of his remittance as stated in defendant's letter to him dated January 7 and mailed January 14, 1929.

In its answer defendant alleged—

"10. That said Frank Henry Wegner, or the plaintiff herein, or any other person did not pay the sum of one hundred thirty-four and 30/100 dollars ($134.30), being the amount of the second quarterly premium due on said policy, and the amount of seven and 58/100 dollars ($7.58), being the unpaid balance of the first quarterly premium; and defendant canceled said policy of life insurance, No. 10804, on the 8th day of February, 1929, and that said policy was not in force and effect at any time subsequent thereto."

When all the foregoing details are fully digested, the controlling question in this lawsuit is whether defendant had a right to cancel policy No. 10804 on February 7, 1929, about six weeks before the death of the insured.

The statute governing cancellation and forfeiture of policies for nonpayment of premiums under which this policy was written was chapter 184 of the Laws of 1925. Section 1 of that statute declares it to be unlawful, within six months after default in payment of any premium or installment of premium, to forfeit or cancel any life insurance policy (except certain policies not here concerned) without first giving notice in writing to the insured of its intention to do so. Section 2 reads:

"Before any such cancellation or forfeiture can be made for the nonpayment of any such premium the insurance company shall notify the [holder of] *insured under* any such policy that the premium thereon, stating the amount thereof, is due and unpaid, and of its intention to forfeit or cancel the same, and such [policyholder] *insured* shall have the right at any time within thirty days after such notice has been duly deposited in the post office, postage prepaid, and addressed to such [policyholder] *insured* to the address last known by such company [in which] to pay such premium: *Provided, That in lieu of the notice hereinbefore provided in the case of policies providing for a period of grace of not less than thirty days or one month for the payment of premiums and containing any provision for cancellation or forfeiture in case of nonpayment of premiums at the end of such period, the insurance company may, not more than thirty days prior to the date specified in such policy when any premium will become due and payable without grace, in like manner notify the insured under any such policy of the date when such premium will fall due, stating the amount thereof, and its intention to forfeit and cancel the same if such premium be not paid within the period of grace provided in the policy,* and any attempt on the part of such insurance company, *within six months after default in the payment of any premium,* to cancel or forfeit any such policy without the notice herein provided for shall be null and void. The affidavit of any responsible officer, clerk or agent of the corporation, authorized to mail such notice, that the notice required by this section has been duly addressed and mailed by the corporation issuing such policy shall be *prima facie* evidence that such notice has been duly given."

The italics in the text just quoted indicate the new matter included in the amended statute of 1925 which did not appear in the prior statute of 1913, R. S. 40-332, 40-333. A comparison of the act of 1925 with the prior statute is necessary because it must be determined whether the interpretations of this court heretofore given to the earlier statute concerning notice of intention to cancel should be followed under the act of 1925 in dealing with such a policy

as No. 10804 where a thirty-days' grace period is one of its specific terms. Under the earlier statute, this court repeatedly held that a premature notice of intention to cancel a policy was ineffective. In *Priest v. Life Association,* 99 Kan. 295, 161 Pac. 631, it was held that a notice to forfeit a policy of life insurance given before the time had expired within which payment might rightfully be made did not satisfy the statute. In *Cunningham v. Insurance Co.,* 106 Kan. 631, 189 Pac. 158, that statute was construed to "forbid a forfeiture on account of the nonpayment of a premium until a thirty-day notice thereof shall have been given after such default has occurred." In *Wolford, Administratrix, v. Insurance Co.,* 114 Kan. 411, 413, 219 Pac. 263, it was said:

"It has been determined that the statute mentioned to the effect that a cancellation notice given before the time in which payment may rightfully be made is not a valid statutory notice, and this forfeiture or termination of liability on the policy does not result from it. [Citations.]"

See, also, *Swayze v. Mutual Life Ins. Co.,* 32 F. (2d) 784.

In the later case of *Bank Savings Life Ins. Co. v. Baker,* 120 Kan. 756, 244 Pac. 862, certain differences in the acts of 1913 and 1925 were discussed, but not the particular point of present concern. Since the policy now under consideration provided for a grace of one month and for the payment of premiums and for cancellation or forfeiture at the end of such period for nonpayment, the proviso of section 2 of the act of 1925 quoted above becomes important. It provides that in policies like Wegner's—

"The insurance company may, not more than thirty days prior to the date specified in such policy when any premium will become due and payable without grace, in like manner notify the insured under any such policy, of the date when such premium will fall due, stating the amount thereof, and its intention to forfeit or cancel the same if such premium be not paid within the period of grace provided in the policy. . . ."

It thus appears that this statute disavows any legislative intention to add a statutory grace period of thirty days to the grace period of thirty days provided in the policy contract itself. It does not provide for a thirty-days' notice to be given when the grace period had expired. It says the notice may be given "not *more* than thirty days prior to the date when the premium is due." It does not prescribe a thirty-days' notice nor forbid a notice of less time. Applied to this case Wegner's second installment of the third year's premium was due on January 7, 1929. The grace period provided by the policy would carry the time to February 7, 1929. Any time

"not more than thirty days" prior to January 7, the notice might have been given. But the notice dated January 7, mailed January 14, after the due date and after a week of the grace period itself had begun to run, did not conform to the statute.

It should be noted that the statute (Laws 1925, ch. 184) provides, broadly speaking, that it shall be unlawful for an insurance company, "within six months after default in payment of any premium, or installment of premium," to forfeit or cancel the policy on account of nonpayment of premium without first giving notice, in writing, of its intention to do so; and further provides, "and any. attempt on the part of such insurance company, within six months after default in the payment of any premium, to cancel or forfeit any such policy without the notice herein provided for shall be null and void."

So the only way the insurance company could cancel the policy within six months after default in payment of premium was by giving a notice which conformed to the statute.

The statute provides for one of two notices. In the first part of section 2 it is provided that a notice may be given that the premium, stating the amount, "is due and unpaid," and stating the intention of the company to cancel the policy. When that notice is given the insured has the right, within thirty days after the notice has been mailed to him, to pay the premium. Now this part of the statute is the same as the old statute (R. S. 40-333), except that the word "insured" is used instead of "policyholder," which gets away from the question raised in *Zeigler v. Kansas Life Ins. Co.,* 120 Kan. 252, 243 Pac. 272. Under this statute it was repeatedly held that the notice could not be given until the premium is in fact "due and unpaid." (*Priest v. Life Association,* supra; *Reynolds v. Insurance Co.,* 105 Kan. 669, 185 Pac. 1051; *Cunningham v. Insurance Co.,* supra; *Wolford v. Insurance Co.,* supra.) And it was held in those cases that where the policy fixed a date for the payment of premium and contained a provision by which the insured had a thirty-day or one-month grace period for the payment of premium,. the notice given before the end of the grace period was premature. Under this part of the statute, as construed by the decisions just referred to, the notice given in this case, whether figured on the date January 7, when it was dated, or January 14, when it was mailed,. was not a compliance with the statute, for the reason that the grace period did not end until February 7.

The other notice which may be given is provided for by the proviso in section 2 of the statute. This relates to policies containing a thirty-day or one-month grace period, and the policy in this case contained such a provision. With respect to such a policy the statute provided that in lieu of the notice provided for in the first part of the section, and which we have previously discussed, the insurance company may "not more than thirty days prior" to the premium-paying date provided in the policy, notify the insured when the premium will be due, stating the amount, and of its intention to forfeit or cancel the same if the premium is not paid within the thirty-day grace period. In this case, if the insurance company wanted to give notice under this provision of the statute, the notice should have been mailed before January 7. It is barely possible that a notice mailed on January 7 would have been sufficient, but the insurance company here did not mail the notice until January 14, although it was dated the 7th. So the notice is not good under that provision of the policy.

The result is that the company did not comply with either of the provisions of the statute with respect to giving notice of forfeiture, and under the statute the attempted forfeiture at any time within six months of January 7, without giving such notice, was void. Hence the policy was in force at the time of the death of the insured.

It follows that on the first cause of action the judgment is affirmed and on the second cause of action the judgment is reversed with instructions to enter judgment for plaintiff.

HUTCHISON, J., dissents from so much of the opinion and decision as holds the defendant liable on the second cause of action.