No. 31,502

ANNA EMILIE MINNA PEDERSEN, *Appellant*, v. THE UNITED LIFE
INSURANCE COMPANY OF KANSAS, *Appellee*.

No. 31,503

CECELIUS NIKOLOI JOHANNES PEDERSEN, a Minor, et al., *Appellants*, v. THE UNITED LIFE INSURANCE COMPANY OF KANSAS,
*Appellee*.

(33 P. 2d 297.)

Opinion filed
June 9, 1934.

*Samuel E. Bartlett* and *George D. Miner*, both of Ellsworth, for the appellants.

*C. E. Rugh, Karl B. Rugh* and *B. F. Napheys, Jr.,* all of Abilene, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: These actions were begun to recover on a policy of life insurance which defendant issued to the late Niels Marinus Pedersen, husband of the plaintiff in case No. 31,502, and father of the plaintiffs in case No. 31,503.

The facts were developed by the pleadings and by admissions of the parties.

It appears that on January 7, 1929, the defendant, for a lawful consideration, executed and delivered to the insured a policy of insurance in the sum of $5,000; and some two months later, in accordance with its terms, defendant permitted a change of beneficiaries to be made by Pedersen, which change was to the effect that in the event of his death $1,000 in cash should be paid to his wife, and $4,000 in monthly instalments for a period of ten years should be paid to his eight minor children.

The consideration for the policy in the first instance was a premium in the sum of $138.30, which Pedersen paid at the time the policy was executed and delivered to him, January 7, 1929. The policy contained nearly all of the elaborate provisions of the usual life insurance contract, and so far as necessary they will be referred to as we proceed.

When the policy was a year old, on January 7, 1930, Pedersen paid the second annual premium of $138.30 in full. At the beginning of the third year, January 7, 1931, Pedersen chose to pay only a quarter of the annual premium, $36.65, as he was privileged to do under the terms of the policy. This quarterly premium paid the insurance to April 7, 1931. He paid nothing further, and on August 14, 1931, he died.

Plaintiffs' claims under the policy were rejected, and this lawsuit was begun on December 22, 1931.

In its answers in both cases defendant admitted various noncontroversial matters and alleged that on or about March 7, 1931, it forwarded to Pedersen a notice reminding him that the next quarterly premium would be due on April 7, 1931.

Defendant also alleged that on April 8, 1931, it forwarded to Pedersen by mail a notice reciting that the premium was due and unpaid, and—

"That the company intends to forfeit or cancel said policy, except as to the right to a surrender, or extended or paid-up insurance value, if any, as pro-

vided by the terms of the policy contract, unless payment of such premium is made within thirty-one days from the deposit of this notice in post office."

Defendant further alleged that on April 18, 1931, it sent a further notice to Pedersen, as follows:

"This will remind you that the premium described below is past due and unpaid. We sincerely trust that you will give this matter your early attention, and that we may be in receipt of remittance before the expiration of the period granted by the terms of your policy.

"Please return this notice with remittance

THE UNITED LIFE INSURANCE CO. OF KANSAS.
By M. C. BEAMER, *Secretary.*

Policy number
2157

Prem. due date
7 April 1931

"Quarterly premium $36.65."

The trial court construed the policy, the pertinent statutory provisions, the pleadings and admissions of the litigants, and found generally in favor of defendant, and judgment was entered accordingly.

Plaintiffs appeal, emphasizing the ineffectiveness of the three successive notices to terminate the insurance contract, that it was in force when Pedersen died, and that these actions which were begun four months and eight days after his death were not barred by the provisions of the insurance code, R. S. 1933 Supp. 40-412, upon which defendant chiefly relies to uphold the judgment.

The policy in this case did not contain any specific provision for its cancellation or forfeiture for nonpayment of premiums. It did allow a grace perod of one month for the payment of every premium after the first, during which time the insurance should remain in force. Among its general provisions was one which read:

"Any part of the premium for the current policy year remaining unpaid at the death of the insured will be deducted in any settlement hereunder."

The payment of a quarterly premium at the beginning of the third year carried the insurance until April 7, 1931, and the grace period continued it in force until May 7, 1931, by the specific terms of the insurance contract.

Can it be said that the policy expired on the latter date? Certainly the contract did not say so. And just as certainly the notices sent by defendant to the insured on March 7, April 8, and April 18, singly, or altogether, were ineffective to terminate it. (*Priest v. Life Association,* 99 Kan. 295, 161 Pac. 631; *Cunningham v. Insurance Co.,* 106 Kan. 631, 189 Pac. 158; *Wolford, Administratrix, v. Insurance Co.,* 114 Kan. 411, 413, 219 Pac. 263; *Wegner v. Federal Re-*

*serve Life Ins. Co.,* 130 Kan. 600, 287 Pac. 591; 131 Kan. 100, 289 Pac. 431.)

While the cases just cited dealt with policies of insurance issued before the enactment of the present insurance code, yet the pertinent provisions of the latter have not lessened their potency on the point under present consideration. R. S. 1933 Supp. 40-410 makes it unlawful for any life insurance company other than fraternal to forfeit or cancel a policy of life insurance "within six months after default in payment of premium . . . without first giving notice in writing . . . of its intention to forfeit or cancel the same." R. S. 1933 Supp. 40-411 prescribes the requisites of such a notice and also the time and method for terminating policies which give a grace period of one month and which contain "any provision for cancellation or forfeiture in case of nonpayment of premiums." Failing to conform to these requirements to cancel or forfeit the policy, the insurance contract could not be terminated "within six months" for default of payment of premium. The statute says:

". . . Any attempt on the part of such insurance company, within six months after default in the payment of any premium, to cancel or forfeit any such policy without the notice herein provided shall be null and void. . . ." (R. S. 1933 Supp. 40-411.)

We have already noted that the policy did not contain any provision for its cancellation or forfeiture for nonpayment of premium on its due date. On the contrary it fairly appears that the policy contemplated the possibility that some part of the premium *for the current year* might be unpaid at the death of the insured, and it provided for the deduction of any such amount when the obligation of the insurer was settled.

In view of the foregoing we think it clear that defendant took no effective steps to cancel, forfeit or terminate the insurance policy, and therefore it was still in force when the death of the insured occurred, four months and seven days after the second quarterly instalment of the third year's premium became due. (*Exchange State Bank v. Poindexter,* 137 Kan. 101, 108, 19 P. 2d 709.)

The next point urged in support of the judgment is that notwithstanding the ineffectiveness of the notices set out above, and that the policy was still in force when the insured died, by virtue of the statutory provisions just cited, this action on behalf of the beneficiaries was barred by the statute because it was not begun until

December 22, 1931, which was 8 months 15 days after default of payment of premium due April 7, 1931. This point is based on the next section of the insurance code, which reads:

"No action shall be maintained upon or in respect to any contract of life insurance heretofore or hereafter made, upon which any premium shall remain unpaid after the expiration of the period specified in the policy for the payment of such premium, for the enforcement of any right under such contract which is by the terms of the policy conditioned upon the payment of such premium, or which is by the terms of the policy subject to termination or cancellation for failure to pay such premium, unless such action, or an action to reinstate such policy as a premium-paying policy, shall be commenced within six months after the expiration of the period specified in the policy for the payment of the premium so remaining unpaid in cases of failure to pay which may hereafter occur, or within six months from the date hereof in cases of failure to pay which have heretofore occurred." (R. S. 1933 Supp. 40-412.)

Does the above section mean that the time within which the plaintiff beneficiaries could have brought these actions to recover on the policy was merely what remained of the six months' period after default in the payment of premium, April 7, 1931? Their actions were begun within four months and eight days after the death of the insured. Was that too late?

Defendant insists that such is the correct interpretation of the section, and that it applies and governs absolutely. It appears to be a unique feature of our insurance code. However, there is a section of the New York insurance law which deals with the same general subject. It provides that no life insurance company within one year after default in payment of any premium or instalment thereof shall declare a policy of life insurance to be lapsed or forfeited for such default (policies based on monthly or weekly premiums and term policies excepted) unless a prescribed notice has been given at least fifteen days and not more than forty-five days prior to the date the premium is payable; and among other matters it further provides:

"No action shall be maintained to recover under a forfeited policy, unless the same is instituted within two years from the day upon which default was made in paying the premium, installment, interest or portion thereof for which it is claimed that forfeiture ensued." (Cahill's Consol. Laws of New York, ch. 30, p. 1192.)

In *Thompson v. Postal Life Ins. Co.*, 226 N. Y. 363, one of the defenses to a policy of life insurance was the statute of limitations

based on the provision of section 92 of the New York insurance law just quoted. In disposing of that contention the court, in part, said:

"CARDOZO, J.: . . .

". . . No action to recover the amount of the insurance would lie during his (the insured's) life. (Citations.) It follows that no such right of action was barred by limitation at his death. He was not required to sue in equity to declare the policy in force (*Miesell v. Globe Mut. Life Ins. Co.*, supra, at p. 120). . . . The rule of limitation applies to actions to 'recover under' policies (Insurance Law, Sec. 92). That is not an apt description of an action which seeks a judicial declaration that a policy exists. No duty to seek such a declaration rests upon one insured unless this statute has imposed it. The statute has not done so in express terms. It has not done so, we think, by reasonable implication. Such a change, if intended, should find its origin in plainer words. It was not the purpose of the lawmakers in enacting a rule of limitation to effect by indirection a transformation of the law of remedies. In thus holding, we do not leave the statute without some field of operation. It applies to actions to recover the surrender value or like benefits remaining after lawful forfeiture. We are not required to decide that it may not apply to other situations. We think it does not apply to the situation now before us." (p. 369.)

And so here. The insured, in his lifetime, was not required by section 40-412 of the Kansas insurance code to institute some sort of action on this policy to adjudicate that its terms were governed by the pertinent statutes. The causes of action in behalf of these plaintiffs did not accrue until the insured died. When that event occurred the liability of the defendant on the insurance policy became absolute. It became a debt for which an action governed by the code of civil procedure would lie. That is the sort of actions these plaintiffs did bring, and they were timely brought under the civil code. Paraphrasing the language of Judge Cardozo, if the legislature has intended a transformation in the law of remedies in respect to the time for the bringing of actions on life insurance policies it could easily have done so in plainer words. We cannot believe it was the purpose of the lawmakers in revising, codifying and improving our insurance laws to effect, by indirection, such a startling transformation of the law of remedies as the interpretation of 40-412 urged by appellee would accomplish. We think it clear that the actions were brought in good time. (Civ. Code, § 17.)

This court holds that the facts alleged in plaintiffs' petition, the truth of the controlling features of which was conceded by the admitted exhibits and admissions of the litigants, stated good causes of action in favor of plaintiffs; that the legal objections thereto

raised by defendants in their answer and brief were insufficient; consequently the judgment must be reversed; and since there is nothing left to warrant further litigation, final judgment in both appeals should be ordered in favor of plaintiffs.

Reversed, with instructions to enter judgment for plaintiffs.