**Bessie Florine MINER, Plaintiff-Appellee,**

v.

**STANDARD LIFE AND ACCIDENT INSURANCE COMPANY, a Corporation, Defendant-Appellant.**

**No. 71–1080.**

United States Court of Appeals, Tenth Circuit.

Dec. 2, 1971.

Rehearing Denied Jan. 5, 1972.

W. Luke Chapin, Medicine Lodge, Kan., for plaintiff-appellee.

John A. Johnson, Oklahoma City, Okl., for defendant-appellant.

Before PICKETT, HILL and BARRETT, Circuit Judges.

PICKETT, Circuit Judge.

This action was brought by appellee Bessie Florine Miner, the beneficiary-policy owner of two $25,000 life insurance policies issued by appellant Standard Life and Accident Insurance Company insuring the life of her deceased husband. The evidence reveals that premiums were paid for two and one-quarter years and that the last premiums paid were more than fifteen months before the death of the insured. Upon failure to receive a quarterly payment, appellant mailed two notices to the insured advising that the premiums were due. No premiums were paid within six months after the date of the default in premium payments. The trial court concluded that the policies remained in force and effect to the date of death, due to the company's failure to conform to Kansas Notice Statutes, K.S.A. 40–410 and 40–411, and entered judgment accordingly.

The central issue involved in this appeal is whether the Kansas statutes relating to notice of forfeiture and cancellation of life insurance policies have application when there has been a default in premium payments for a period of more than six months.

The applicable Kansas statutes are Section 40–410, which provides in part,

"Cancellation of policy for nonpayment of premiums; notice, when; policy-owner defined. It shall be unlawful for any life insurance company, other than fraternal, doing business in this state within six (6) months after default in payment of any premium or installment of premium, to forfeit or cancel any life insurance policy on account of nonpayment of any such premium or installment of premium thereon, without first giving notice in writing to the policyowner of such policy of its intention to forfeit or cancel the same    .    .    .    ."

and Section 40–411, which is as follows:

"Notice of intention to cancel policy for nonpayment of premium; time for payment. Before any such cancellation or forfeiture can be made for the non-payment of any such premium the insurance company shall notify the policyowner of any such policy that the premium thereon, stating the amount thereof, is due and unpaid, and of its intention to forfeit or cancel the same, and such policyowner shall have the right, at any time within thirty (30) days after such notice has been duly deposited in the post office, postage prepaid, and addressed to such policyowner to the address last known by such company, to pay such premium: *Provided*, That in lieu of the notice hereinbefore provided, in the case of policies providing for a period of grace of not less than thirty (30) days, or one month, for the payment of premiums and containing any provision for cancellation or forfeiture in case of nonpayment of premiums at the end of such period, the insurance company may, not more than thirty (30) days prior to the date specified in such policy when any premium will become due and payable without grace, in like manner notify the policyowner under any such policy, of the date when such premium will fall due, stating the amount thereof, and its intention to forfeit or cancel the same if such premium be not paid within the period of grace provided in the policy; and any attempt on the part of such insurance company, within six (6) months after default in the payment of any premium, to cancel or forfeit any such policy without the notice herein provided shall be null and void. The affidavit of any responsible officer, clerk or agent of the corporation authorized to mail such notice, that the notice required by this section has been duly addressed and mailed by the corporation issuing such policy shall be prima facie evidence that such notice has been duly given."

The insured was notified of the due date of the premiums on the policies but it is not seriously contended that these notices satisfied the statutory requirements.

The policies provided that all premiums are payable in advance and that the consideration for them was the payment of the premiums provided for therein. The default provision of the policies is in the following language:

"Except as provided herein, the payment of a premium shall not maintain this policy in force beyond the due date of the next premium. If any premium is not paid on or before the date it falls due, such premium is in default; but a grace of thirty-one days, without interest charge, will be allowed for the payment of every premium after the first, during which time this policy will remain in force, and if death occurs within the grace period the premium then due and unpaid will be deducted from the amount otherwise payable hereunder. If any premium in default is not paid before the expiration of the grace period, this policy will become null and void except as otherwise expressly provided herein."

The essential facts were stipulated. The policies were issued to the insured and became effective on December 17, 1965. Thereafter the insured made nine quarterly premium payments, the last

being for the quarter beginning December 17, 1967. The next premium due date was March 17, 1968. During the month of January, 1968 the insured borrowed on the policies to the full extent of their cash value. No premiums were paid thereafter. When no premiums were received within the grace period, the company lapsed the policies, charged the amount of the outstanding loans against the cash value of the policies, and credited the excess cash value to the policy accounts. The insured died March 30, 1969.

█ We agree with the trial court that under Kansas law if the insurance company "elected to forfeit or cancel the policies within a period of six months after default in premium payments," the statutory notice was required. In other words, the statutory notice provisions are part of the policy, and life insurance policies issued in Kansas which provide termination upon default of premiums due thereon cannot be canceled or forfeited prior to six months from the date of default without giving the statutory notice. Logan v. Victory Life Ins. Co., 175 Kan. 88, 259 P.2d 165 (1953); Pedersen v. United Life Ins. Co., 139 Kan. 695, 33 P.2d 297 (1934); Wegner v. Federal Reserve Life Ins. Co., 130 Kan. 600, 287 P. 591, 595 (1930). The unambiguous terms of the policies without the aid of the statute provide that they shall have no efficacy after default. Minnesota Mut. Life Ins. Co. v. Cost, 72

F.2d 519 (10th Cir. 1934). We disagree with the trial court's conclusions that the policies were effective beyond the statutory six-month period.

The insured died approximately fifteen months after the date of default. The trial court recognized that the statute did not require notice of forfeiture after the six-month period, but construed the statute, under the circumstances, to require some "positive action" on the part of the company to completely eliminate liability.[1] The trial court apparently thought that after the six-month period had elapsed, the company, to free itself from liability on the policies, must take some unilateral action to show that it intended to forfeit the policies. It relied on a statement in the *Logan* case that by the enactment of the 1913 statute, "the legislature evinced an intention that it was requiring some positive action by the company" to notify the insured that it intended to forfeit or cancel the policy. The "positive action" statement obviously had reference to the statutory notice required by the 1913 statute and also the 1925 amendments, and not the bookkeeping methods used by life insurance companies to show that a policy had lapsed for nonpayment of premium.

Prior to 1913, life insurance policies in Kansas could be forfeited according to the terms of the policies. The 1913 statute provided generally that a life insurance policy could not be canceled by an insurance company for failure to pay

---

1. The trial court, with reference to the statutory provisions making it unlawful for a life insurance company to forfeit or cancel a policy within six months without notification of its intention to do so, stated as follows:

    " . . . The Court agrees that after September 17, 1968, the Company was free 'to forfeit or cancel' the Miner policies without any notice whatsoever to the Miners that it intended to do so, or that in fact, it had done so. However, in the instant case, defendant did nothing. It can not rely upon the July 19th entries in its books and records, for these entries to effect cancellation were made within the six-

    month period and were thus null and void under the statute. In legal effect, these entries were never made upon the records of the Company.

    "In arriving at this conclusion the Court is of the view that the terms 'forfeit or cancel' imply and require some affirmative undertaking on the part of the insurer to effect such a result, and that there can be no automatic 'lapse' either before, or after the elapse of a six-month period after default. In so determining the Court has carefully considered the opinion of the Court in Minnesota Mutual Life Insurance Co. v. Cost, supra, 72 F.2d 519. . . ."

premiums without giving the policyholder notice of the intended cancellation or forfeiture. The Kansas courts held that the forfeiture provisions of policies were ineffective in the absence of the statutory notice regardless of the time that had expired after default and required payment on the policy if the insured died prior to the notice. Bank Sav. Life Ins. Co. v. Baker, 120 Kan. 756, 244 P. 862 (1926).

It is quite plain that the purpose of the 1913 statute was to protect policyholders who might overlook the payment of premiums when due, and not to give an insured additional insurance without premium. Swayze v. Mutual Life Ins. Co., 32 F.2d 784 (D.Kan.1929). Such statutes should be construed in the light of this object and not to create a trap for either the insurance company or the insured. Nederland Life Insurance Co. v. Meinert, 199 U.S. 171, 179, 26 S.Ct. 15, 50 L.Ed. 139 (1905); Mutual Life Insurance Co. v. Hill, 193 U.S. 551, 24 S.Ct. 538, 48 L.Ed. 788 (1904). The 1925 amendment to the 1913 statute was designed to fix a limit of six months for which life insurance coverage would be continued if no adequate notice was given after the policyholder had defaulted in the payment of premiums. This purpose is inherent in all of the Kansas decisions since the enactment of the amendment and is so stated in the latest expression of the Kansas Supreme Court in the *Logan* case. The 1925 amendment was intended to remedy a condition which the 1913 statute created by requiring notice before forfeiture regardless of the time expiring after default. It provided a means of forfeiting a policy before six months after default by strict compliance with the Notice provisions. Reynolds v. Metropolitan Life Ins. Co., 105 Kan. 669, 185 P. 1051 (1919). There is no indication in the *Logan* case, or any other Kansas case, that the policy could be extended beyond the six-month period. We think the trial court's construction of this statute is contrary to the holding of this court in Minnesota Mut. Life Ins. Co. v. Cost,

72 F.2d 519, 522, 523 (10th Cir. 1934), where, in answer to a like argument, it was said:

"Such literalism would destroy the statute, for, precisely speaking, life policies are not canceled or forfeited when they lapse for nonpayment of premiums. The legislature used those words as they are frequently used, by laymen, courts, and text-writers, to include the result which follows nonpayment of premiums. The intent of the legislature is entirely clear; it intended to require life companies to warn its policyholders of the due-dates of their premiums, and to afford them a reasonable time in which to pay the premiums after the warning, to the end that the protection afforded widows and children should not be lost by forgetfulness or oversight. That intent is clear by a reading of the statute; it has been declared by many courts in construing similar statutes. The Supreme Court of the United States held that a trifling mistake in the notice mailed did not perpetuate the insurance coverage, saying in part:

" 'The purpose of the statute was to prevent a forfeiture by the nonpayment of the premium when due because of inadvertence or forgetfulness; and when the assured receives the very notice required by the statute, its purpose is fulfilled, although the notice contains in another respect such a mistake as does this notice. * * * A statute of this kind should not be construed so as to make it a trap for either side. Forfeitures, though generally not regarded with favor by courts of equity, yet are necessary, and should be fairly enforced, in cases of life insurance. Promptness of payment is essential in such business.' Nederland Life Ins. Co. v. Meinert, 199 U.S. 171, 179, 181, 26 S. Ct. 15, 17, 50 L.Ed. 139, 4 Ann.Cas. 480."

In Wegner v. Federal Reserve Life Ins. Co., 130 Kan. 600, 287 P. 591, 593 (1930), the court said that "(t)he stat-

ute in force at the time this policy was written \* \* \* did not forbid the cancellation of an insurance policy with or without notice, where the default in payment of premium has existed for over six months." The Missouri Supreme Court, in considering a question like the one presented here, after reviewing the Kansas statutes and the Kansas court decisions, said: "We therefore hold that the courts of Kansas have, in effect, declared that the statute in question has no application whatever to a policy after the premium thereon has remained in default for a period of more than six months. . . ." Atkinson v. Metropolitan Life Ins. Co., 234 Mo.App. 357, 131 S.W. 918, 920 (1939). We find nothing in the policy provisions which could extend the coverage beyond the six-month period. At the time of default the net cash value of each policy was $11.11, which would purchase a maximum of twenty-one days of extended insurance. Mrs. Miner asserts that the insurance company lacked authority to deduct the amount of the indebtedness against the policy in determining its cash value; that it failed to give the notice required by the policy prior to voiding the policy for failure to pay the loan, and that in any event the policy remained in effect for the face amount less the indebtedness—assuming that the extended insurance provisions of the policies were available to the policyholder.[2]

■ Liability on the policy terminated because of failure to pay premiums when due and not for default in loan obligations. The policy provided that in determining net cash value, the loan indebtedness should be deducted. It was stipulated that the net cash value of the policies after deducting the loan was $11.11, which would purchase extended term insurance for a maximum period of twenty-one days on each policy from March 17, 1968. Under the policy provisions, this method of determining "net cash value" available for purchase of extended insurance after default was proper. K.S.A. 40–428(a) (v), (vi); Bach v. Western States Life Ins. Co., 51 F.2d 191 (10th Cir. 1931); 6 Couch on Insurance 2d, Sec. 32:242, p. 476. No benefit accrued to the insured.

Reversed and remanded with instructions to enter judgment for the defendant.

---

2. The application for insurance and the policies, by typewritten insertion, stated that there was "no extended insurance."