No. 34,458

CORA W. SHELTON, *Appellee,* v. THE UNITED LIFE AND ACCIDENT
INSURANCE COMPANY, *Appellant.*

(96 P. 2d 675)

Opinion filed December 9, 1939.

C. W. Burch, B. I. Litowich, LaRue Royce, L. E. Clevenger, E. S. Hampton
and R. E. Haggart, all of Salina, for the appellant.

David Ritchie and C. L. Clark, both of Salina, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action by a beneficiary, widow of the
insured, to recover on a life insurance policy. Judgment went for
plaintiff, and the insurance company appeals.

The action was tried by the court, and it made findings of fact
and conclusions of law. Defendant complained concerning the last
sentence contained in finding number eight, to be quoted presently,
of the court's refusal to make findings requested by it and objected
to all conclusions of law. Appellant's principal contentions are,
first, the policy was not in force on the date of the insured's death,
and second, the action was barred under the provisions of G. S. 1935,
40-412.

The policy was issued for the sum of $2,500. It was a twenty-
year policy and was issued on January 14, 1920. It provided for
payment of premiums annually, semiannually or quarterly. ,The

annual premium was $129.83. The quarterly premium was $32.43. Insured had made premium payments for a number of years prior to the year 1937, under the "cash or loan value" provision of the policy. In this manner the premiums were fully paid to the quarterly period of the year 1937, ending on April 14, 1937. The trouble began with the premium due April 14, 1937. Material facts pertaining to the following subjects, to wit, the status of the policy as to loan value, the contents of the notice to insured as to loan value, the grace period, date of notice of intention to forfeit or cancel the policy for nonpayment of premium; a check mailed to the insurer on June 30, 1937, and the response of the company to that check, are all covered in chronological order in the findings of fact. In order, however, that the reader may have before him the conclusions of law made by the court, while analyzing the facts, we shall state those conclusions now. They were:

"1. The notice of intention to cancel said policy deposited in the mail box in front of the office on May 14, 1937, was insufficient and inadequate in form to cancel said policy.

"2. Said notice of intention to cancel was prematurely sent.

"3. Said policy had not been canceled and was in force and effect at the time insurer received the check for $184.51, which paid premium and interest due and renewed said policy until January 14, 1938.

"4. Said policy of insurance was in force and effect on the date of the death of insured on December 6, 1937.

"5. Plaintiff is entitled to judgment against defendant for $2,500 and interest, less the amount or amounts due insurer on said loan or loans."

For the purpose of this appeal, it is sufficient to begin with those findings which narrate the facts, beginning with the year 1937.

Those findings were:

"3. . . . The premium due upon said policy January 14, 1937, and the interest due on said date were not paid within the grace period. The loan value of said policy at said date was not sufficient to pay an annual premium and interest on said loan, so that an automatic loan was applied to cover a quarterly premium due January 14, 1937, amounting to $32.43, together with interest on the policy loan from January 14, 1937, to January 14, 1938, in the sum of $68.22 increasing the loan from $1,036.30 to $1,196.95. The premium due on said policy April 14, 1937, was not paid. The cash value of said policy on April 14, 1937, if there had been no loans against it would have been $1,105. The insured was entitled to a refund of unearned policy loan interest of $51.16. This refund of unearned interest reduced the indebtedness from $1,136.95 to $1,085.79 as of April 14, 1937, *which left a cash value of said policy in the sum of $19.21, which was not sufficient to pay the quarterly premium due April 14, 1937, and the interest upon said loan for that quarterly period.*

"4. The policyholder was notified of each loan against said policy each time an automatic loan was made.

"5. Upon May 14, 1937, the defendant duly deposited *'in the mail box in front of the office,'* at Concord, N. H., a notice properly addressed to the policyholder, postage prepaid, which said notice reads as follows: 'To Albert A. Shelton, 205 S. Santa Fe St., Salina, Kan. Being the insured under Policy No. 11006, issued by the United Life and Accident Insurance Company, said policy providing for a period of grace of thirty-one days for the payment of premiums and containing provisions for cancellation or forfeiture in case of nonpayment of premiums at the end of such period. Notice is hereby given that on April 14, 1937, a premium of $32.43 *will fall due on said policy;* and of the intention of said company to forfeit or cancel said policy if such premium be not paid within the period of grace provided in the policy. United Life and Accident Insurance Company.'

"6. Letters mailed at Concord, N. H., addressed to Salina, Kan., consume three full days for transportation by United States mail.

"7. Said notice of intention to cancel said policy of insurance mailed at Concord, N. H., on the afternoon of May 14, 1937, did not arrive at Salina, Kan., earlier than May 17, 1937.

"8. During and after May, 1937, Albert A. Shelton, insured, was in ill health and from then until his death was confined almost constantly to his room or home. During all of that time his wife, beneficiary in said policy, and plaintiff herein, received, opened and answered his mail for him. *She testified, and the court so finds, that said notice deposited 'In the mail box in front of the office' on May 14, 1937, was not received by insured, or by her.*

"9. On June 29, 1937, insuror mailed a letter to insured, which read as follows:

"'JUNE 29, 1937.

"'Mr. Albert A. Shelton,
205 S. Santa Fe street,
Salina, Kansas:*                                    Policy 11,006—$2,500.

"'DEAR MR. SHELTON—Notice is hereby given that your policy ceased to be in force because of your failure to pay the premium *due April 14.*

"'At the time of default there was charged against your policy a total outstanding indebtedness of $1,136.95 *which was in excess of the value of the available automatic nonforfeiture option.*

"'We genuinely regret that after continuing your policy for over seventeen years you permitted it to lapse at a time when we may assume your need for it is greater than when the policy was first taken out.

"'You will be glad to know that on approval of your application for reinstatement and a payment of $67.87 your policy will be reinstated and the premiums paid up to January 14, 1938.

"'If you wish to take advantage of this option kindly sign the enclosed loan agreement and have a competent physician fill out the enclosed reinstatement blank. Return these completed papers with your policy and remittance of $67.87.

"'If the state of your insurability is still satisfactory to the company your policy will be reinstated promptly, subject to the indebtedness as stated in the loan agreement.

"'We trust that you will take advantage of the assistance we are able to extend you to retain your insurance in force. Make sure that when you die your life insurance policy is alive.                    Yours truly,
HMF"                                                        Supervisor.'

"10. *On June 30, 1937, and before said letter dated June 29, 1937, was received by insured,* his wife, Cora W. Shelton, for and on his behalf forwarded and sent a check payable to insuror for $184.51, drawn on the Farmers National Bank of Salina, Kan., and covering the premium on said policy for one year, and the interest on the loan made as aforesaid, as per the notice or statement sent insured during January, 1937. *No objection as to the form of payment or offer to pay is or has been made or was made by insuror, and it has been stipulated by the parties at the trial of this case that at all times on and after June 30, 1937, sufficient money to pay said check has been on deposit in the Farmers National Bank of Salina, Kansas, if and when presented for payment, and that same would have been paid if presented for payment by insuror.*

"11. Thereafter on July 8, 1937, insuror mailed a letter to insured which letter was received by insured and reads as follows:

"'JULY 8, 1937.
"'Mr. Albert A. Shelton,
205 So. Santa Fe street,
Salina, Kan.:                                                     Policy 11,006.

"'DEAR MR. SHELTON—Thank you very much for your check for $184.51 which you mailed with the notice of the premium due January 14, amounting to $122.33 annually, and $62.18 loan interest.

"'This is the amount due on January 14, 1937. However, on March 30, 1937, upon nonpayment of this premium an automatic premium loan was applied to cover loan interest of $68.22, which was unpaid due January 14, and a quarterly premium due January 14, 1937, of $32.43, making a total loan of $1,136.95. Loan interest on this increased loan was deducted to January 14, 1938, and your policy showed premiums paid to April 14, 1937. Upon nonpayment of the premium due April 14, the policy ceased to be in force, and you have no doubt received our letter dated June 29 informing you that your policy had terminated and outlining a plan to enable you to apply for reinstatement.

"'Upon receipt of your check for $184.51 which we cannot, of course, accept until your policy is approved for reinstatement, we *credited this amount to our suspense account pending receipt of an application for reinstatement completed by a physician.* We are enclosing another reinstatement form in case you have misplaced the one mailed you in our letter of June 29. Upon receipt of this reinstatement form properly completed we would suggest that you write us authorizing us to apply the amount which we hold in our suspense account as follows: $32.43 to cover the quarterly premium due April 14, 1937, 49c interest on the overdue premium, $63.60 to cover the semiannual premium due July 14, 1937, provided of course your policy is approved for reinstatement and the balance of $87.99 be applied to reduce the loan charged against your policy. We hope you will return the reinstatement form as promptly as possible and let us know if our suggestion regarding application of the check which we hold in our suspense account pending reinstatement of your policy meets with your approval, at which time the policy will receive immediate consideration for reinstatement.                                  "'Very truly yours,
HTR:MER'                                                        Supervisor.'

"12. The court further finds that said check for $184.51 was not cashed by insuror and *was not placed in its suspense account as stated in its letter of July 8, 1937,* but was in fact held by it in its original condition, and was returned to insured, being enclosed with its letter to the insured dated August 5, 1937, the pertinent part of which letter, dated August 5, 1937, read as follows:

"'As we cannot accept your check dated June 30 for $184.51, we are returning it to you with this letter representing refund of the amount received after your policy lapsed.'

"13. On December 6, 1937, insured, Albert A. Shelton, died, and proof of death of the insured and claim and demand for payment was made on defendant herein on or before January 7, 1938, and payment refused.

"14. The petition and praecipe for summons were filed in this case on January 20, 1938, and service of summons was had upon the commissioner of insurance at Topeka, Kan., on January 22, 1938, at 9 o'clock a. m.

"15. In her petition plaintiff renewed her tender of payment of said $184.51 and at the trial of this case paid said sum into court for the benefit of defendant." (Italics ours.)

The grace period for payment of premiums was thirty-one days. In the automatic nonforfeiture clause was contained this provision:

". . . When the total indebtedness to the company hereon shall equal or exceed the loan value, this policy shall be void thirty-one days after notice shall have been mailed to the last-known address of the insured and the assignee of record, if any, unless during such period the indebtedness shall be reduced to an amount not exceeding the loan value."

The "cash loans" clause, however, contains an additional requirement as to notice. It reads:

"After three full annual premiums have been paid, the company will at any time advance upon this policy the amount of its then cash surrender value, less all indebtedness upon this policy and interest thereon, the same to bear interest at the rate of six percent per annum, payable annually in advance; *provided that failure to repay any advance, whether made in cash or in payment of premiums, or to pay interest shall not avoid the policy until thirty-one days after notice shall have been mailed* to the last-known address of the insured and the assignee of record, if any, *that the total indebtedness thereon to the company equals or exceeds the loan value."* (Italics ours.)

The parties have fully treated the following questions: Did the notice of May 14, 1937 (see finding No. 5), which sought to advise the insured "that on April 14, 1937, a premium of $32.43 *will fall due on said policy,"* conform to the statute governing notice of intention to forfeit, which was in force at the time the policy contract was made and which it is agreed was section 2, chapter 212, Laws of 1913. It provided:

"Before any such cancellation or forfeiture can be made for the nonpayment of any such premium the insurance company shall notify the holder of any such policy that the premium thereon, stating the amount thereof, *is due and unpaid,* and of its intention to forfeit or cancel the same, and such policyholder shall have the right, at any time within thirty days, after such notice has been duly *deposited in the post office,* postage prepaid, and addressed to such policyholder to the address last known by such company, in which to pay such premium; and any attempt on the part of such insurance company to cancel or forfeit any such policy without the notice herein provided for shall be null and void. The affidavit of any responsible officer, clerk or agent of the

corporation, authorized to mail such notice, that the notice required by this section has been duly addressed and mailed by the corporation issuing such policy *shall be prima facie evidence that such notice has been duly given."* (Italics ours.)

Did the depositing of the notice *"in the mail box in front of the office"* of the insurance company, comply with the above statutory requirement that the notice be deposited in the post office; was the affidavit made in compliance with the above statute sufficient to prove that notice of intention to forfeit had been duly given where the oral testimony of the insurer's witness disclosed the notice had been deposited in the *mail box in front of its office,* and that the notice had not been returned to its file as "uncalled-for mail," and where appellee in charge of her husband's mail during the period of his illness testified, and the court believed, that the notice had not been received by the insured or by appellee (see finding No. 8); was the cash loan provision applicable to the subject of notice of intention to forfeit, and if so, did the notice of May 14, 1937, comply with that provision; was the notice of May 14, 1937, of insurer's intent to forfeit, premature; was the policy in force on the date of insured's death?

All questions presented become secondary to the last one stated. If the policy was never effectually terminated then the policy was not void on the date of the insured's death. The grace period was thirty-one days. The insured, therefore, had thirty-one days after April 14, within which to pay the premium and could have paid it on May 15, 1937. That was his vested right under the terms of the policy contract. The notice of intention to forfeit, assuming for the moment it was sufficient in content and that the affidavit concerning the giving of notice complied with that portion of the statute, was given during the grace period and was, therefore, premature and did not effectuate a forfeiture of the policy. (*Pedersen v. United Life Ins. Co.,* 139 Kan. 695, 697, 33 P. 2d 297; *Sebal v. Columbian Nat. Life Ins. Co.,* 144 Kan. 266, 268, 58 P. 2d 1108, and numerous cases therein cited.)

The letter of June 29, 1937, from appellant to insured, does not constitute, and was not intended to constitute, a notice of intention to forfeit if the premium was not paid. (See finding No. 9.) That letter stated the policy ceased to be in force by reason of failure to pay the premium due on April 14, 1937. But appellant could not have forfeited the policy under section 2, chapter 212, Laws of 1913,

heretofore quoted, before thirty days had elapsed after the insured, under a valid notice, had been notified of the insurer's intent to forfeit. No valid notice of such intention was ever given. The check of the insured in the sum of $184.51 was mailed June 30, and was received by appellant prior to July 8, 1937. The stipulation admits the check was good. (See findings No. 10.) The policy was never forfeited and was in force on the death of the insured.

Since the notice of May 14 was prematurely given, it is unnecessary to consider its insufficiency on any of the grounds alleged or whether the manner of mailing constituted notice under the statute.

Appellant contends the action was barred under the provisions of G. S. 1935, 40-412, which reads:

"No action shall be maintained upon or in respect to any contract of life insurance heretofore or hereafter made, upon which any premium shall remain unpaid after expiration of the period specified in the policy for the payment of such premium, for the enforcement of any right under such contract which is by the terms of the policy conditioned upon the payment of such premium, or which is by the terms of the policy subject to termination or cancellation for failure to pay such premium, unless such action, or an action to reinstate such policy as a premium-paying policy, shall be commenced within six months after the expiration of the period specified in the policy for the payment of the premium so remaining unpaid in cases of failure to pay which may hereafter occur, or within six months from the date hereof in cases of failure to pay which have heretofore occurred."

It is true, the policy on its face did not contain a provision for a thirty-day notice of intention to forfeit. But that, in legal contemplation, was not the entire policy. The 1913 statute requiring such a notice was in effect on the date this policy was issued. The policy, of course, could not be written in derogation of that statute. The statute prescribed the manner in which the policy could be terminated, and it gave insured thirty days after a valid notice of intention to forfeit within which to pay the premium. That statutory requirement was a part of the policy as much as though it were expressly incorporated therein. (*Reynolds v. Insurance Co.*, 105 Kan. 669, 675, 185 Pac. 1051; *Cunningham v. Insurance Co.*, 106 Kan. 631, 189 Pac. 158; *Bank Savings Life Ins. Co. v. Baker*, 120 Kan. 756, 244 Pac. 862; *Sebal v. Columbian Nat. Life Ins. Co.*, 144 Kan. 266, 268, 58 P. 2d 1108.) No valid notice of intention to forfeit was given and the premium, therefore, did not remain unpaid after the expiration of the period specified in the policy and the action was brought in time under the limitation prescribed in G. S.

1935, 40-412. Moreover, this is not an action by the insured to enforce some right he might have had under the policy, but is an action by the beneficiary. It has been held an action on the policy by the beneficiary is governed by the limitations provided by the civil code and not by G. S. 1935, 40-412, of the insurance code. (*Pedersen v. United Life Ins. Co.*, 139 Kan. 695, 33 P. 2d 297.)

The judgment is affirmed.