No. 39,017

WILLA R. LOGAN, *Appellee*, v. THE VICTORY LIFE INSURANCE COMPANY, a Corporation, *Appellant*.

(259 P. 2d 165)

Opinion filed July 6, 1953.

*Barton E. Griffith,* of Topeka, argued the cause and *Riley W. MacGregor, Vernon F. Coss* and *John W. MacGregor,* all of Medicine Lodge, were with him on the briefs for the appellant.

*W. Luke Chapin,* of Medicine Lodge, argued the cause and was on the briefs for the appellee.

*Clyde J. Cover,* of Fort Wayne, Ind., was on the briefs for The Lincoln National Life Insurance Company, of Fort Wayne, Ind.; *Roy C. Davis,* of Hutchinson, was on the briefs for the Great American Life Insurance Company, of Hutchinson; *Hal E. Harlan* and *A. M. Johnston,* both of Manhattan, were on the briefs for the Kansas Farm Life Insurance Company, of Manhattan; *Alvin R. Springer* and *Richard D. Rogers,* both of Manhattan, were on the briefs for the Manhattan Mutual Life Insurance Company, of Manhattan; *Harry W. Colmery* and *James E. Smith,* both of Topeka, were on the briefs for the Pioneer National Life Insurance Company, of Topeka; *Joseph F. Sheen,* of Chicago, was on the briefs for the Security Benefit Life Insurance Company, of Topeka; and *Kern J. Miles* and *Robert L. Bach,* both of Indianapolis, Ind., were on the briefs for the American United Life Insurance Company, of Indianapolis, Ind., as *amici curiae.*

The opinion of the court was delivered by

SMITH, J.: This was an action on a life insurance policy. Judgment was for the plaintiff. Defendant has appealed.

After the formal allegations, the petition stated that defendant on March 5, 1951, issued to Logan its life insurance policy for $5,000 with double indemnity for accidental death in the form of an ordinary life policy; that the insured died as the result of an accident on October 24, 1951; that the policy did not contain a provision for cancellation in case of nonpayment of premium at the end of a grace period following the due date of a quarterly installment; that defendant did not mail to Logan any notice of intention to cancel the policy, which complied with the provisions of G. S. 1949, 40-410 and 40-411; that the policy was in full force and effect on the date of the accidental death of Logan on October 24, 1951, and defendant was liable to plaintiff under the terms of the policy in the amount of $10,000 less the unpaid balance of the annual premium for the current year.

Judgment was asked for $10,000.

Defendant answered admitting the issuance of the policy and the death of the insured. A copy of the policy was attached to the answer. The answer then pleaded a provision of the policy as follows:

"CONSIDERATION. This insurance is granted in consideration of the application herefor, a copy of which is attached hereto, and made a part hereof, and the payment in advance of $37.60, being the premium for three months, beginning on the fifth day of March, 1951, and the further payment of a like amount every three policy months thereafter during the lifetime of the insured."

and an "accidental death benefit" rider as follows:

"CONSIDERATION. Fifth: This supplement is issued in consideration of the application hereof, all of the statements and agreements offered by the insured as inducements for issuing said policy and this supplement, and the payment in advance quarterly of $2.65, along with and in addition to the premium on this policy, so long as this supplement shall be in force."

The answer then pleaded the quarterly premium on the policy was $40.25; that defendant on May 22, 1951, gave notice to Logan that a quarterly premium of $40.25 would become due and payable on June 5, 1951, and unless such was paid before the expiration of the grace period of one month, provided by the policy, it would be canceled and all payments on it would be forfeited (a copy of this notice was attached to the answer and marked Exhibit "B"). The answer then pleaded this notice was duly mailed to the insured.

The answer then set out a general provision of the policy which reads as follows:

"PREMIUM PAYMENTS. Premiums are due and payable at the Home Office of the Company or may be paid to any authorized agent of the Company but

only for a receipt signed by the President or Secretary and countersigned by such agent. Premiums may be payable annually, semi-annually · or quarterly at the rates in use by the Company at the date of issue hereof, and the mode of premium payment may be changed at any premium due date. The payment of any premium shall not continue this policy in force beyond the due date of the next premium. Should death occur while the policy is in full force any unpaid balance of the annual premium for the then current policy year shall be deducted from any amount payable hereunder.

"5. GRACE PERIOD. A grace period of one month (not less than thirty days) without interest will be allowed for the payment of each premium after the first. If the insured shall die during the grace period, the current year's premium or any portion thereof remaining unpaid shall be deducted from any amount payable hereunder."

The answer then alleged that insured did not pay the quarterly premium which was due and payable on June 5, 1951, and did not prior to his death pay any quarterly premium; that on such date as appeared by the terms of the policy it had not been in force for a sufficient length of time to have any cash·surrender or extended insurance value; that by reason of all these things defendant on July 6, 1951, caused the policy to be lapsed and canceled and it was not in force and effect on October 24, 1951, when insured died.

The provisions of the policy deemed important have already been set out in the answer. The notice of June 5, 1951, to which reference was made in the answer, was as follows:

"EXHIBIT B

"THE VICTORY LIFE INSURANCE COMPANY
Home Office: Topeka, Kansas
PREMIUM NOTICE

"A premium payment on your policy will become due and payable on the date shown below, provided the policy is then in force.

| AGENT | S. T. FRAZER 67 | DATE DUE |
|---|---|---|
| POL. NO. 90232 | PFIL5M351M39C P | 5th DAY OF JUNE 1951 |
| PREMIUM | | |
| Annual 151.80 | ROBERT C. LOGAN | |
| Semi-Ann. 78.95 | RT. 1 | |
| Quarterly 40.25 | KIOWA, KANS. | |
| Int. on Loan | | |

*Form V.* Please Return This Notice With Your Payment in the Enclosed Self-Addressed Envelope.
(See Other side)

THE VICTORY LIFE INSURANCE COMPANY
Topeka, Kansas
CONDITION OF NOTICE

"Notice is hereby given that, in accordance with the terms of the policy designated on the reverse side of this notice, the premium thereon and interest

on any indebtedness thereon, will become due as specified; and that unless said premium and interest shall be paid to the Company at its Home Office in Topeka, Kansas, before the expiration of the grace period of one month (not less than thirty days) provided by the Policy, said policy will be cancelled and will become void, and all payments thereon forfeited, except as to such right as may be guaranteed by said policy to an automatic premium loan, a surrender value, extended insurance, or paid-up insurance.

"This notice does not modify any of the terms of the contract, and no payment made in pursuance of it shall be valid if policy be not in force on due date stated herein. This notice is not an admission or waiver of payment of any prior premium."

The reply was a general denial.

There was no dispute about the facts and a jury was waived and the cause submitted to the court.

The trial court recites the facts about as they have been detailed here and such were accepted by the parties.

The trial court then held and entered judgment as follows:

"THEREUPON, the court proceeded to a consideration of the law as applied to the facts as pleaded and admitted and to the further facts as found by the court. The court having considered the facts and the law concludes: that forfeitures are not favored by the law and should be enforced only when statutes are strictly complied with; that the policy involved does not contain any provision for forfeiture or cancellation at the end of the grace period; that under the law and the provisions of said policy, said policy was not subject to forfeiture and cancellation on the notice which was given to the insured prior to due date of the quarterly premium, and that therefore said policy remained in full force and effect, under the statute, for a period of six months from June 5, 1951, and was in full force and effect on October 24, 1951, upon which date the insured met his death by accidental means. The court further finds and concludes that by reason thereof, the plaintiff should have and recover judgment against the defendant for the sum of $10,000.00, less the unpaid balance of the current annual premium in the sum of $111.55, with interest at the rate of six per cent per annum from October 24, 1951, and for the costs of this action."

Hence this appeal.

The specifications of error are that the court erred in concluding as a matter of law (a) that the policy provisions were not such that defendant could under G. S. 1949, 40-411, give that notice which it did give to the insured; (b) that that notice which defendant gave to the insured was not effective to terminate and cancel the policy after nonpayment of the second quarterly premium; and (c) that the policy was in force and effect upon the date of the death of the insured, and that the trial court erred in entering judgment for the plaintiff and against the defendant upon the facts and the law.

There is no dispute but that the notice was given insured a few days before the due date of the premium. This would place it before the beginning of the grace period. If this policy should be construed or should we hold the policy provided for a period of grace of not less than thirty days or one month for the payment of premiums and contained any provision for cancellation or forfeiture in case of nonpayment of premiums at the end of such period, the notice given in this case was good, and liability of the company on the policy ended on July 5, 1951, at the end of the grace period. Should, however, we hold that the policy did not meet these two requirements, then the notice was not good and the policy was in effect for six months after the due date of the last premium and the company is liable.

The outcome turns on the construction to be given the terms of the policy in the light of G. S. 1949, 40-410 and 411. The trial court held the policy did not contain a provision for forfeiture or cancellation at the end of the grace period and gave judgment for plaintiff.

It seems to be conceded that this policy did not contain the provisions required by the statute in express words. It is the contention of defendant, however, that the provisions of the policy did meet the requirements in substance within the meaning and intent of the statute. These provisions have been heretofore set out in this opinion. For the sake of clarity they will be summarized again here. The first is the paragraph of the application signed by insured as follows:

"The first premium paid either at the time of making this application or upon subsequent delivery of the policy when issued shall carry the proposed insurance only until the next premium date named in the policy."

The next is the consideration paragraph as follows:

"This insurance is granted in consideration . . . the payment in advance of $37.60, being the first premium for three months, beginning on the fifth day of March, 1951, and the further payment of a like amount every three months thereafter during the lifetime of the insured."

The next is in that part of the policy dealing with premium payments where it is provided:

"The payment of any premium shall not continue this policy in force beyond the due date of the next premium."

Defendant points out these provisions in the policy and argues that by agreeing to them insured agreed that his insurance under the policy should cease when he ceased paying premiums. In other

words, the above provisions of the policy actually did in effect amount to a provision for cancellation or forfeiture of the policy in case of nonpayment of premiums at the end of the grace period.

The plaintiff argues for a more literal and strict interpretation of the statute and the policy.

In the first place insurance contracts are not regarded in the law as are ordinary contracts where parties may bind themselves as they wish. G. S. 1949, 40-420, provides what a policy of insurance shall contain in some twelve particulars. Every policy must contain these provisions no matter what the parties may wish. One of the early cases dealing with the effect to be given the section which is now G. S. 1949, 40-410, at that time cited as section 1, chapter 212 of the Laws of 1913, was *Reynolds v. Insurance Co.,* 105 Kan. 669, 185 Pac. 1051. There the policy contained a clause waiving the above section. We held this provision was void. The question with which we are dealing here is as much a matter of legislative policy as that of contract. Where the statute and the policy are in conflict the statute governs.

Our problem is to ascertain what was the legislative intent. Was it to provide that substantial compliance was sufficient or was it the legislative intent that strict compliance should be had with the provisions of G. S. 1949, 40-410 and 411? An examination of the legislative history of the act will be helpful. A concession by counsel for the defendant is helpful in narrowing somewhat the scope of our inquiry. He concedes there is no statutory requirement that any insurance company give to any insured any notice of a premium that will come due under a policy. He concedes the only requirement of the statute is that if a life insurance company desires to effect a lapse or cancellation of a policy for nonpayment of premiums sooner than six months after default that it shall give to the insured at the proper time either one kind of a notice or another depending on the class of policy. The provision as to six months comes solely from the statute.

The subject was first dealt with in 1913. (See chapter 212 of the Session Laws of 1913.) The first section of that chapter simply made it unlawful for any life insurance company other than fraternal to forfeit or cancel any life insurance policy for nonpayment of premium without giving notice in writing of its intentiton so to do. Here we find a positive declaration of legislative policy toward life insurance. This provision took the matter of cancellation for non-

payment of premiums out of the hands of the contracting parties. (See *Reynolds v. Insurance Co.,* supra.)

The second section of chapter 212 provided what the notice should contain and provided that it should state the premium was due and unpaid and the policyholder should have the right within thirty days after the notice had been duly deposited in the mailbox in which to pay such premium and any attempt on the part of the company to cancel or forfeit any policy without such notice would be void. It should be noted there was no mention in this act of a grace period.

We have made two interpretations of it. One *Reynolds v. Insurance Co.,* supra., the other *Priest v. Life Association,* 99 Kan. 295, 161 Pac. 631. In the latter case the quarterly premium was due according to the policy on July 1, 1914. On June 23, 1914, the company sent a notice to the insured advising him when the premium would be due, calling attention to the grace period, and stating the insurance would cease if the premium was not paid on or before August 1, 1914. This was the end of the grace period. The company contended the notice given before the due date of the premium was in effect to cancel it. We said:

"The court regards the statute as providing for notice of an intention to forfeit under an accrued right to forfeit, and not for notice given before the time for payment has expired that forfeiture will be enforced if payment be not made. The notice of June 23 did not and could not state that the assessment, which was not due until July 1, and which could be paid as late as August 1, was both due and unpaid, as the statute requires."

The case is of interest here because it demonstrates the attitude of this court to place a rather strict construction on the statute. The section provided for a notice that the premium was "due and unpaid." The court simply held the premium could not be due and unpaid as long as any period of time remained during which it could be paid. As remarked by counsel for *amicus curiae* here, the practical result of this decision was to give an insured sixty days within which to pay a defaulted premium since the statutory thirty days' notice had to be given after the expiration of the grace period. Actually it is more nearly correct to say the policy provided one thirty-day grace period and the statute provided for a thirty-day notice beyond that. Certain it is, from the beginning in our interpretation of this statute we have held it meant just what it said. It should be noted, too, from the beginning the legislature evinced an intention that it was requiring some positive action by the com-

pany. It used throughout this statute the phrase "to forfeit or cancel" and "intention to forfeit or cancel" as opposed to a mere expression "to lapse on the part of the insured."

The case of *Reynolds v. Insurance Co.*, supra, opinion handed down in 1918, had held the statute applied to industrial policies where the premium was payable weekly or monthly. Obviously this was not intended, so the statute was amended in that respect in 1923. (See chapter 154 of the Laws of 1923.) *Priest v. Life Association*, supra, had been decided in 1916. However, it made a strict construction of the statute but no attempt was made to amend that feature.

The session for 1925 introduced the proviso which is the cause of this lawsuit. Chapter 184 of the Laws of 1925 amended the first section of chapter 212 of the Laws of 1913 by providing that the insurer could not forfeit or cancel any policy for nonpayment of premiums within six months after default. This was the first time a limit was placed on the time within which the notice must be given. In this same chapter the legislature amended what had been the second section of chapter 212. The provision that had been construed by us was left undisturbed, that is, the notice must state the premium was "due and unpaid." The legislature then added a proviso. This setting up a class of policies to which a different law as to notice should apply, two requisites were provided, first, the policy must contain a period of grace of not less than thirty days for the payment of premiums (the first time apparently a grace period had been mentioned in the statutes); second, it must contain a provision for cancellation or forfeiture in case of nonpayment of dues at the end of such period. This could not have referred to any period other than the grace period that had been spoken of in the next preceding clause of the sentence. The section went ahead and provided that where the two provisions just referred to were in the policy the company could not more than thirty days prior to the date when the premium would become due and payable without grace (in like manner that must refer to the notice spoken of earlier in the section) notify the insured of the date when the premium "will fall due" (the notice provided for earlier in the section was that the premium is due and unpaid rather than speaking in the future, stating the amount, its intention to forfeit or cancel or forfeit if the premium be not paid within the period of grace provided in the policy). The section proceeded then to provide

that any attempt on the part of·such insurance company within six months after default in the payment of any premium to cancel or forfeit any such policy without the notice provided for should be void.

Plaintiff cites and relies on *Pedersen v. United Life Ins. Co.*, 139 Kan. 695, 33 P. 2d 297, and defendant attempts to distinguish it. In that case the last premium paid the policy up to April 7, 1931. The grace period expired on May 7, 1931. Three notices of intention to cancel and forfeit were given insured, the latest of them on April 18, 1931. The insured died on August 14, 1931, less than three months after the due date of the premium. We held the insurance company liable. In the syllabus we stated:

"Where a policy of life insurance contained no specific provision for its cancellation for nonpayment of premium, and did contain a provision that any part of the premium for the current year remaining unpaid at the death of the insured would be deducted in any settlement thereunder, the provisions of the insurance code, R. S. 1933 Supp. 40-410 and 411, governed the method by which the policy could have been terminated for default in payment of premium; and *held,* that the notices sent by defendant to the insured touching the next payment of premium did not conform to the statute and were ineffective to terminate the insurance contract, and the policy was in force when the death of the insured occurred.

"Where the insured died within six months after the date (April 7, 1931) when the second quarterly instalment of the third year's premium became due and remained unpaid, but where no effective steps were taken to forfeit the policy and it remained in force by virtue of the statute (R. S. 1933 Supp. 40-410, 40-411) until the death of the insured on August 14, 1931, it is held that actions by the beneficiaries to recover on the policy begun on December 22, 1931, were filed in time and not barred by R. S. 1933 Supp. 40-412." (Syl. ¶ 1 and 2.)

It should be noted we construed the statute to mean the policy must contain a "specific provision" for cancellation for nonpayment of premium. Actually defendant argues here the statute does not require such a provision. That opinion was written in 1934. The legislature has met several times since then and no amendment has been made. Surely if the legislature had intended some other interpretation an amendment clarifying the statute would have been made. A critical examination of the provisions of the policy in this case, upon which defendant depends, does not warrant the conclusion for which it argues. The entire history of G. S. 1949, 40-410 and 40-411 and the opinions where we have construed them indicate the legislature intended by the proviso in G. S. 1949, 40-411, as to a grace period in the policy that such provision should

be considered and construed together with the provisions for forfeiture. They were interrelated. Does this policy do that? The first such provision is the consideration clause. No mention of a grace period was made there. Next paragraph 4 of the general provisions, somewhere about the middle of this we find the provision—"The payment of any premium shall not continue this policy in force beyond the due date of the next premium." No mention was made of a grace period here. It is true the next paragraph of the general provision No. 5 provides for the grace period. Defendant makes a great point of this and argues that all the provisions of the policy must be construed together. Such is the general rule. However, we held in *Pedersen v. United Life Ins. Co.,* supra, this provision for forfeiture and cancellation must be specific. These are not specific. Rather they require a legal construction of all the provisions of the policy to reach even an argument for such a conclusion. The rule that where a policy is ambiguous it must be construed in favor of the insured means ambiguous to a layman, not to a lawyer. This policy is not clear that if the premiums were not paid at the end of the grace period the policy will be forfeited and canceled. The policy does not say that. This conclusion is in harmony with what this court held in *Sebal v. Columbian Nat. Life Ins. Co.,* 144 Kan. 266, 58 P. 2d 1108. There the statute, G. S. 1949, 40-410 and 411, before they were amended, were considered along with the policy and a strict construction followed.

A vigorous argument is made that no advantage was taken of insured. It is not a question of the insured being defrauded. The sole question is a legislative one. The legislature provided in 1913 how a life insurance should be forfeited for nonpayment of premium. Once we conclude such to be a valid enactment, and there is no question about that, then we are forced to the conclusion that case was decided correctly in the court below.

The judgment of the trial court is affirmed.

THIELE, WEDELL, and PRICE, JJ., dissent.