Katherine THOMAS, Appellant,

v.

CONTINENTAL CASUALTY COM-
PANY, Appellee.

No. 5105.

United States Court of Appeals
Tenth Circuit.

Aug. 6, 1955.

Paul R. Kitch, Wichita, Kan. (Howard T. Fleeson, Homer V. Gooing, Wayne Coulson, Dale M. Stucky and Donald R. Newkirk, Wichita, Kan., were with him on the brief), for appellant.

Wm. P. Thompson, Wichita, Kan. (A. W. Hershberger, J. B. Patterson and Richard Jones, Wichita, Kan., were with him on the brief), for appellee.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

The appellant, Katherine Thomas, appeals from a summary judgment in favor of appellee, Continental Casualty Company, in an action on an "air travel insurance policy" issued by Continental to the deceased husband of appellant. The facts are not in dispute.

On July 13, 1953, Jack Thomas purchased an airline ticket for transportation from Wichita, Kansas to San Salvador, El Salvador, via Tulsa, Oklahoma

and New Orleans, Louisiana, and return by the same route. The passage date on the outward flight was July 14, 1953, and the return portion of the ticket carried open dates, to remain in force for a period of twelve months after its issuance until used.

While en route in New Orleans on July 16, 1953, Thomas applied for and was issued Continental's accident insurance policy in the principal sum of $50,000, in which appellant was named beneficiary. In bold type, the policy provided for "payment for loss of life, limb, sight and medical expenses resulting from bodily injury caused by an accident—to the extent herein limited and provided." Under the heading "Schedule" appears the name and address of the insured and the name and relationship of the beneficiary, the flight number and date from New Orleans to San Salvador, the fare and premium paid, and the face amount of the policy. Then follows in smaller type the insuring agreement providing in material part that " 'injury' wherever used in this policy means bodily injury caused by an accident occurring while this policy is in force and resulting directly and independently of all other causes in loss covered by this policy and during the one way or round trip stated in the schedule for which a transportation ticket has been issued to the insured; provided such injury is sustained (a) in consequence of riding as a passenger in, boarding, alighting from or being struck by an aircraft operated on a regular, special or chartered flight * * * (b) in consequence of being in or upon any premises or surface vehicle the use of which for passengers is provided or arranged for by such airline or by the authority controlling an established airport."

Thomas arrived in San Salvador on July 16, 1953, via Pan American Airlines on the flight scheduled in his ticket. Ten days later he was killed when a privately owned aircraft in which he was a guest passenger was struck as it was taking off from the San Salvador Airport by an aircraft operated by Pan American on a regularly scheduled flight. The flight in which he was engaged at the time of the accident was no part of the scheduled flight for which the round trip ticket was issued.

When Continental denied liability under its policy, appellant beneficiary brought this suit in the District Court of Kansas on requisite diversity of citizenship and amount in controversy. After issues were joined on the pleadings, stipulations and answers to interrogatories, both parties moved for summary judgment, pursuant to which the court entered judgment for the insurer.

The death of the insured was indisputably in consequence of "being struck by an aircraft" operating on a regularly scheduled flight within the meaning of the policy; and it might also be said that death was in consequence of "being in or upon any premises * * * provided or arranged for by such airline or by the authority controlling an established airport." The narrow and decisive question is whether the loss occurred "during the one way or round trip stated in the schedule for which a transportation ticket has been issued to the insured." And, the issues are further sharpened by the apparent intent of the insurer to assume specifically enumerated risks only during the one way or round trip flight as stated in the schedule for which the transportation ticket was issued; and it seems to be agreed that if the drafters of the policy had used the word "flight" instead of "trip", there would be no doubt or ambiguity concerning the extent of coverage afforded by the terms of the policy, consequently no liability thereunder.

The appellant would have us construe the words "during the one way or round trip" to denote the space of time during which the policy would remain in force and effect and cover the specifically enumerated risks; that as thus construed, the policy was in force from the time the insured left New Orleans on his scheduled flight until his round trip was completed within the time limitations of the ticket.

The policy is a Louisiana contract to be substantively construed according to the statutory laws of that state. But the applicable statutes, LSA–C.C. art. 1945 et seq., are in conformity with the universal common law rule to the effect that contracts of insurance, like all other contracts, must be construed according to their plain, ordinary and accepted sense, unless the parties indicate that they shall receive a special or artistic meaning; and all ambiguities arising from such construction are to be resolved against the drafter. Albritton v. Fireman's Fund Ins. Co., 224 La. 522, 70 So.2d 111; Eddy v. Travelers Ins. Co., Hartford, Conn., 10 Cir., 212 F.2d 518; Fidelity & Casualty Co. of New York v. Smith, 10 Cir., 189 F.2d 315, 25 A.L.R.2d 1025. The language used belongs to the drafter and it is from the professional mind and hand. But, it is to be interpreted in the mind's eye of the layman who buys it upon the representations and inducements conveyed by the bold type, not the fine print. Logan v. Victory Life Ins. Co., 175 Kan. 88, 259 P.2d 165, 171. If, therefore, the critical words are ambiguous to the lay mind, "the insurer may not escape liability merely because his or its interpretation should appear to us a more likely reflection of the intent of the parties than the interpretation urged by the insured. The latter has to be no more than one which is not itself unreasonable." Continental Casualty Co. v. Warren, 152 Tex. 164, 254 S.W.2d 762, 763. All ambiguities will be resolved against the insurer, but the insured is charged with the plain ordinary meaning of inartistic words, and we will not torture words to import ambiguity where ordinary meaning leaves no room for such. Eddy v. Travelers Ins. Co., supra. Words do not become ambiguous simply because lawyers or laymen contend for different meanings, or even though their construction becomes the subject matter of litigation.

Judged by these canons of construction, we have to say whether, when the insurer used the word "trip" to denote a flight, it left no room for doubt in the mind of the lay purchaser of the ticket that the risks specifically assumed were incident only to the flight for which his ticket was issued. While "trip" and "flight" may ofttimes be used interchangeably in common parlance to indicate an air journey, no one, even the drafter, would say that the two words are necessarily synonymous. Thus, no one would deny that "air trip" might mean something more than mere "air flight". And, in determining whether the word "trip" as used in this policy was intended to mean more than mere air flight from New Orleans to San Salvador and return, and that the policy was intended to cover only the assumed risk incident to that flight, we must look to the related words in the policy to determine its ordinary accepted meaning.

The related word "during" as used clearly indicates space of time, and "during the trip", without more, would certainly leave doubt concerning the extent of coverage intended by the use of such words, and the insurer would undoubtedly be charged with the ambiguity flowing from the use of words of such diverse meaning. But the policy does not stop there in its definitive phraseology. It goes on to say that it covers the assumed risks during the trip stated in the schedule for which a transportation ticket has been issued. When the whole sentence is considered together and in its context, it becomes manifestly plain that the words "during the one way or round trip" means air transportation for which a ticket was issued. Thus construed, the policy cannot be reasonably said to cover a risk wholly unrelated to the transportation for which the ticket was issued, that is, an air flight from New Orleans to San Salvador, and from San Salvador to New Orleans.

The judgment of the trial court is Affirmed.