The **KANSAS STATE BANK AND TRUST COMPANY**, Conservator of the Estate of Leon Cornell Van Vessum, a minor, Plaintiff-Appellee,

v.

**OLD AMERICAN INSURANCE COMPANY**, Defendant-Appellant.

**No. 73–1401.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Nov. 12, 1973.

Decided Feb. 5, 1974.

Jack Peggs of Smith, Shay, Farmer & Wetta, Wichita, Kan., for plaintiff-appellee.

J. L. Weigand, Jr., of Weigand, Curfman, Brainerd, Harris & Kaufman, Wichita, Kan., for defendant-appellant.

Before SETH, ALDISERT *, and DOYLE, Circuit Judges.

ALDISERT, Circuit Judge.

Presented in this diversity action, controlled by principles of Kansas law, is the question of whether an insurance policy providing for loss by "being struck or run over by any automobile" covers a loss sustained by being struck by a motorcycle. Having acquired jurisdiction after removal from the state court at the behest of the insurance company, the district court, on stipulated facts, interpreted the policy, found coverage to exist and granted summary judgment in favor of plaintiff. The insurance company has appealed. We reverse.

The adjudicative facts are set forth in the district court's opinion:

The insured Jean K. Hunt, was struck by a 1970 Yamaha 175 c.c. M/C motorcycle while attempting to cross the street in the 300 block, North Coast Highway, Laguna Beach, California, on July 24, 1970. As a result of head injuries sustained in the accident, she died shortly thereafter. Under the policy issued by the defendant, the insured was protected against losses caused by accidental bodily injuries sustained in the following manner:

"1. While the Insured as a passenger or driver is riding in, entering, or alighting from, any private passenger automobile (whether or not owned by the Insured), or

2. While the Insured as a passenger . . . is riding in, entering, or alighting from, any land, air, or water conveyance then engaged as a licensed common carrier of passengers for hire, or

3. By being struck or run over by any automobile or common carrier conveyance while the Insured is a pedestrian on any public street or highway. . . ."

For the purposes of the policy, automobile is defined as a "land vehicle of the type commonly and ordinarily known and referred to as an 'automobile,' and private passenger automobile . . . [is defined as] a 'private automobile designed primarily for transporting persons.'" On August 13, 1971, plaintiff formally filed claimant's proof of accidental death and a certified copy of Jean K. Hunt's death certificate in accordance with the proof of loss provisions of the policy. On August 19, 1971, the defendant denied coverage on the ground that a motorcycle was not an automobile as that term was defined in the policy. The dispute between the parties is centered on whether the term "automobile" as it is defined in the policy clearly excludes motorcycles.

The district court reasoned that the term "automobile" is broad enough· to include all forms of self-propelling vehicles; recognized that "[a] motorcycle is not customarily considered an automobile—the distinction being a motorcycle is a two-wheeled, as opposed to a four-wheeled vehicle"; and found that the "definition of 'private passenger automobile' describes what the Court feels an average person would described [sic] as an automobile, i. e., a four-wheeled vehicle designed primarily to carry passengers."

But the court was impressed with the policy's distinction between "automobile" and "private passenger automobile," and found that "automobile" describes "a more extensive class of vehicles." To hold otherwise, it reasoned, "would render the term ['private passenger automobile'] superfluous." It concluded that the "primary risk contem-

---

\* Of the Third Circuit, sitting by designation.

plated by the provision clearly appears to be that of a pedestrian exposed to motor vehicle traffic" and that "any ordinary insured would consider himself protected under this provision against being struck by any motor vehicle likely to use the streets."

Each party has cited numerous Kansas cases as authority for supporting his position or negating that of his adversary.[1] Unfortunately, none of these cases interprets the precise language at issue in these proceedings. As Justice Holmes once warned: "[E]very question of construction is unique, and an argument that would prevail in one case may be inadequate in another."[2]

Thus, it is important to emphasize what is not before us. This is not a case where the policy contains no definition of the term "automobile". Nor is the term defined as "the motor vehicle or trailer described in this policy" as in Western Casualty & Surety Company v. Budig, *supra*.[3] Here the policy contains a specific definition: "As used in this policy, *automobile* means a land vehicle of the type commonly and ordinarily known and referred to as an "automobile' . . . . "

A review of the authorities discloses that the Kansas Supreme Court respects the generally accepted standards for interpreting insurance contracts. That court has accepted as a threshold determinant our expression in Thomas v. Continental Casualty Company, 225 F.2d 798, 801 (10th Cir. 1955):

All ambiguities will be resolved against the insurer, but the insured is

charged with the plain ordinary meaning of inartistic words, and we will not torture words to import ambiguity where ordinary meaning leaves no room for such. * * * Words do not become ambiguous simply because lawyers or laymen contend for different meanings, or even though their construction becomes the subject matter of litigation. [Citation omitted.]

Kansas Farm Bureau Insurance Company v. Cool, *supra*, 471 P.2d at 356; and has emphasized:

If the language [of an insurance policy] when given its everyday commonly accepted meaning is clear and specific in presenting the subject matter at hand, the objective to be accomplished, the burdens assumed, and the benefits to be enjoyed or received, then the terms of the policy cannot be said to be doubtful of meaning or conflicting in terms. Under these circumstances, courts are not at liberty to indulge in a construction that would give an unnatural meaning to the language in order to accomplish results that could not be shown to have been in the minds of the parties.

*Ibid.*, 471 P.2d at 356–357, citing Ferguson v. Phoenix Insurance Company of New York, 189 Kan. 459, 370 P.2d 379 (1962).

■ Thus, the polestar to guide our inquiry is one of the fundamentals urged by Wigmore: "the standard of the community, or *popular* standard,

---

1. Western Casualty & Surety Company v. Budig, Kan., 516 P.2d 939 (1973); Kansas Farm Bureau Insurance Company v. Cool, 205 Kan. 567, 471 P.2d 352 (1970); Clark v. Prudential Insurance Company of America, 204 Kan. 487, 464 P.2d 253 (1970), and cases cited therein.

2. United States v. Jin Fuey Moy, 241 U.S. 394, 402, 36 S.Ct. 658, 659, 60 L.Ed. 1061 (1916).

3. The Kansas Supreme Court has explicitly recognized a distinction between cases where

"automobile" is used as the broader generic term "motor vehicle" and those where "automobile" is more narrowly used. *See, e. g.*, Western Casualty & Surety Company v. Budig, *supra*, 516 P.2d at 942: "The appellant cites cases from Arkansas, Pennsylvania, Tennessee and other states which hold that a motorcycle is not an automobile under the provisions of certain insurance policies. We have examined those cases and note that the word 'automobile' was not defined in those policies by using the broader generic term 'motor vehicle'."

meaning the common and normal sense of words."[4]

We have been taught by Holmes that "each party to a contract has notice that the other will understand his words according to the usage of the normal speaker of English under the circumstances, and therefore cannot complain if his words are taken in that sense,"[5] and that "[y]ou cannot prove a mere private convention between the two parties to give language a different meaning from its common one. . . . [A]n artificial construction cannot be given to plain words by express agreement. . . ."[6]

Given this as the recognized standard of interpretation, it appears that we have a case of *a fortiori* proportions because this insurance policy commands us to limit our consideration to "a land vehicle of the type commonly and ordinarily known and referred to as an 'automobile'." Thus we not only have a standard of interpretation requiring common and ordinary meaning, but a contract defining the word in those terms.

■ As a starting point we agree with the district court that a "motorcycle is not customarily considered an automobile—the distinction being a motorcycle is a two-wheeled, as opposed to a four-wheeled vehicle." We must then determine whether there are expressions of art or special nuances in the insurance contract to permit an interpretation "outside the hard core of standard instances or settled meaning," described by Professor Hart in his classic debate with Professor Fuller as the "problems of the penumbra."[7]

4. "[T]he possible standards fall roughly into four classes,—the standard of the community, or *popular* standard, meaning the common and normal sense of words; the *local* standard, including the special usages of a religious sect, a body of traders, an alien population, or a local dialect; the *mutual* standard, covering those senses which are peculiar to both or all the parties to a transaction, but shared in common by them; and the *individual* standard of one party to an act, as different from that of the other party or parties, if any." IX Wigmore on Evidence, at 185–186 (1940).

5. Holmes, The Theory of Legal Interpretation, 12 Harv.L.Rev. 417, 419 (1899). (Citation omitted.)

6. Goode v. Riley, 153 Mass. 585, 28 N.E. 228 (1891) Holmes, J.

7. A factual predicate of the Hart-Fuller debate was the interpretation of the word "vehicle": "A legal rule forbids you to take a vehicle into the public park. Plainly this forbids an automobile, but what about bicycles, roller skates, toy automobiles? What about airplanes? Are these, as we say, to be called 'vehicles' for the purpose of the rule or not? If we are to communicate with each other at all, and if, as in the most elementary form of law, we are to express our intentions that a certain type of behavior be regulated by rules, then the general words we use—like 'vehicle' in the case I consider—must have some standard instance in which no doubts are felt about its application. There must be a core of settled meaning, but there will be, as well, a penumbra of debatable cases in which words are neither obviously applicable nor obviously ruled out." H.L.A. Hart, Positivism and the Separation of Law and Morals, 71 Harv.L. Rev. 593, 607 (1958).

Professor Fuller responded:

"Even in situations where our interpretive difficulties seem to head up in a single word, Professor Hart's analysis seems to me to give no real account of what does or should happen. In his illustration of the 'vehicle,' although he tells us this word has a core of meaning that in all contexts defines unequivocally a range of objects embraced by it, he never tells us what these objects might be. If the rule excluding vehicles from parks seems easy to apply in some cases, I submit this is because we can see clearly enough what the rule 'is aiming at in general' so that we know there is no need to worry about the difference between Fords and Cadillacs. If in some cases we seem to be able to apply the rule without asking what its purpose is, this is not because we can treat a directive arrangement as if it had no purpose. It is rather because, for example, whether the rule be intended to preserve quiet in the park, or to save carefree strollers from injury, we know, 'without thinking,' that a noisy automobile must be excluded.

"What would Professor Hart say if some local patriots wanted to mount on a pedestal in the park a truck used in World War II, while other citizens, regarding the proposed memorial as an eyesore, support their stand by the 'no vehicle' rule? Does this truck,

The district court placed the term "automobile" within the penumbra by a process we find difficult to accept. It compared provision (3) of the policy, which is relevant to these proceedings, with provision (1) which is not. Provision (1) relates to losses occurring as a passenger or driver of a "private passenger automobile"; provision (3) relates to losses by being struck or run over by an "automobile" or "common carrier conveyance". Provision (2) is distinct from (1) and (3) in that it relates to losses occurring as a passenger of "any land, air or water convenance then engaged as a licensed common carrier. . . . " There is a rational explanation for the use of these various terms. To say, as did the district court, that the definition of "private passenger automobile" would be superfluous unless "automobile" in provision (3) is held to mean all motor vehicles is to torture plain meaning.

We think it obvious that coverage under (3) extends to any automobile, whether or not it is a "private passenger" automobile. Additionally, this provision extends to a "common carrier conveyance" such as a bus or trolley car. By its very terms, coverage under (1) is much more limited than coverage under (3). While "automobile" as used in (3) covers a more extensive class of *automobiles* than the "private passenger automobile" described in (1), we cannot agree with the district court that it covers "a more extensive class of [*motor*] *vehicles.*"

■■ When the meaning is plain— plain by the standard of the community

and the ordinary reader—no deviation, without rational justification, is permitted. The most recent expression of the Kansas Supreme Court states: "Normally the word automobile when used in the popular sense would exclude motor vehicles such as motorcycles." Western Casualty & Surety Company v. Budig, *supra*, 516 P.2d at 941. We find no difficulty with the ordinary meaning of the policy language. It therefore does not become necessary to invoke the time honored Kansas rule of construing ambiguous or conflicting provisions adversely to the draftsman, or to embark on a semantical excursion into the "problems of the penumbra." We find the language to fall, in Hart's phrase, within "a core of settled meaning." It is difficult to disagree with Justice Noah Swayne's remark a century ago: "If the language be clear it is conclusive. There can be no construction where there is nothing to construe." [8] As we said in Thomas v. Continental Casualty Company, *supra*, "we will not torture words to import ambiguity where ordinary meaning leaves no room for such."

■ The district court found, and properly so, that "[a] motorcycle is not customarily considered an automobile— the distinction being a motorcycle is a two-wheeled, as opposed to a four-wheeled vehicle." It should have stopped there and entered summary judgment for the defendant.

The judgment of the district court is reversed and the proceedings remanded with a direction to enter judgment in favor of appellant.

in perfect working order, fall within the core or the penumbra?" Fuller, Positivism and Fidelity to Law—A Reply to Professor Hart, 71 Harv.L.Rev. 630, 663 (1958).

8. United States v. Hartwell, 6 Wall. 385, 396, 18 L.Ed. 830 (1868).