Barbara J. UNRUH, Individually and as Co–Administrator of the Estate of Phil L. Unruh, deceased, Bradley S. Unruh, Co–Administrator of the Estate of Phil L. Unruh, deceased, Jonathan P. Unruh, Co–Administrator of the Estate of Phil L. Unruh, deceased, Plaintiffs,

v.

PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, Defendant,

v.

Robert W. Stanfield, Jr., Claudia Lee Atkinson, Intervenors.

Civil Action No. 97–2663–GTV.

United States District Court, D. Kansas.

March 19, 1999.

Theodore C. Geisert, Geisert, Wunsch & Watkins, Kingman, KS, for plaintiffs.

Paul P. Hasty, Jr., Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, KS, for defendant.

Cheryl L. Bisbee, Elisabeth R. Sauer, P.C., Kansas City, KS, for intervenor–defendants.

### MEMORANDUM AND ORDER

VANBEEBER, District Judge.

Plaintiffs bring this action on behalf of Barbara J. Unruh and the estate of Phil L. Unruh seeking a declaratory judgment that defendant Prudential Property and Casualty Insurance Company ("Prudential") is estopped to deny coverage under Mr. Unruh's automobile insurance policy. The case is before the court on defendant's motion for summary judgment (Doc. # 46) and plaintiffs' motion for summary judgment (Doc. # 57). Intervenors also oppose defendant's motion. For the reasons set forth below, defendant's motion is granted and plaintiffs' motion is denied.

### I. Factual Background

The following facts are either uncontroverted or are based on evidence submitted with the summary judgment papers viewed in a light most favorable to the nonmoving party. Immaterial facts and facts not properly supported by the record are omitted.

Phil L. Unruh was killed in an automobile accident on August 18, 1996. He was an insurance agent for defendant Prudential. He also insured his automobiles with Prudential, through himself as agent.

Mr. Unruh made several late installment payments on his policy. Prudential notified him each time that his coverage would be canceled if payment was not received by a certain date. Prudential received payments by the date given each time.

In June 1995, Prudential offered to renew Mr. Unruh's automobile coverage effective July 6, 1995, with a policy term of July 6, 1995 to January 6, 1996. Mr. Unruh did not send in his payment. On July 7, Prudential notified Mr. Unruh that his policy had expired, but that if Prudential received payment before July 17, his coverage would be reinstated with no lapse. Prudential received payment on July 24. Mr. Unruh's policy information had not been deleted from Prudential's computer because payment was received within five business days of the due date. Thus, Prudential reinstated Mr. Unruh's coverage with a lapse from July 6 to July 24.

Mr. Unruh's latest policy covered the period from January 6, 1996 to July 6,

1996. On June 3, 1996, Prudential mailed Mr. Unruh an offer to renew his policy for another six months. Prudential's offer set forth a July 6 payment due date. Mr. Unruh failed to respond to this offer. Prudential mailed a second notice to Mr. Unruh on July 8, informing him that his policy had expired, but providing that he could continue his coverage by submitting payment by July 18. Mr. Unruh failed to submit payment by July 18.

In early August 1996, Mr. Unruh mailed two checks to Prudential in payment of the premium. One check was dated August 1 and the other dated August 4. Prudential received and deposited the checks on Thursday, August 8. The checks cleared Mr. Unruh's bank accounts on or about August 12. On August 13, Prudential mailed Mr. Unruh a refund check and notice that the policy would not be reinstated. The refund check and notice arrived at the Unruh home on August 19, the day after Mr. Unruh's accident. Mr. Unruh's check dated August 1 was drawn on his account at American Bank. American Bank issued a statement on his account, which included the cashing of his check to Prudential, for the period from July 9, 1996 to August 13, 1996.

Prudential denied insurance coverage for the August 18 accident. Plaintiffs allege that Prudential is estopped to deny coverage under the decedent's automobile insurance policy because its actions misled Mr. Unruh to believe his policy remained in effect.

## II. Summary Judgment Standards

Summary judgment is appropriate if the evidence presented by the parties demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could resolve the issue either way. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An

issue is "material" if it is essential to the proper disposition of the claim. *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). The court must consider the record, and all reasonable inferences therefrom, in the light most favorable to the party opposing the motion. *Id.*

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Id.* at 670–71 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the moving party will not bear the burden of persuasion at trial, that party "may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671 (citing *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific evidence that creates a genuine issue of material fact left for trial. *Id.*

## III. Discussion

### A. Reinstatement Of Insurance Policy By Equitable Estoppel.

■ Prudential argues that a lapsed insurance policy may not be reinstated under the doctrine of equitable estoppel. The court first notes the distinction between an automobile policy lapse and cancellation. If a carrier terminates a policy during its term, the policy has been canceled. On the other hand, if a policyholder fails to pay a renewal premium by the due date, the policy has lapsed. *See* Apr. 7, 1998 Mem. & Order (Doc. # 21) at 5 (citations omitted). As explained in the court's prior order, Mr. Unruh's policy lapsed for non-payment of premiums. *See id.* at 8. Accordingly, Mr. Unruh had no contract for insurance on the date of his accident. *See id.*

■ Plaintiffs attempt to invoke equitable estoppel to reinstate Mr. Unruh's lapsed policy or to create a new policy.

Kansas law rejects both theories. It is well established that equitable estoppel may be invoked to forestall forfeiture of insurance coverage but it cannot be used to expand or create coverage. *See Von Hillman v. Colonial Penn Ins. Co.,* 19 Kan.App.2d 375, 377, 869 P.2d 248, 249 (1994); *Topeka Tent & Awning Co. v. Glen Falls Ins. Co.,* 13 Kan.App.2d 553, 555–556, 774 P.2d 984, 986 (1989); *Western Food Prods. Co., Inc. v. U.S. Fire Ins. Co.,* 10 Kan.App.2d 375, 381, 699 P.2d 579, 584 (1985). "Forfeiture" generally is synonymous with cancellation or rescission, words which refer to some positive action by the carrier to terminate a policy during its term. *See Logan v. Victory Life Ins. Co.,* 175 Kan. 88, 94–95, 259 P.2d 165, 170 (1953) (discussing statutory distinction between forfeiture and lapse). Here, Prudential is not attempting to enforce a forfeiture provision or otherwise cancel the policy during its term. Indeed, Mr. Unruh's policy already had lapsed at the time of the accident. There cannot be any "forfeiture" of coverage because Mr. Unruh had no insurance for the pertinent time period. *See Western Food,* 10 Kan.App.2d at 378, 381, 699 P.2d at 582, 584 (no forfeiture of coverage where policy specifically excludes coverage for circumstances which took place).

▆▆ Equitable estoppel may only forestall forfeiture of a valid contract of insurance. If a policy lapses by its unambiguous terms, a court cannot reinstate it or create a new policy under the guise of estoppel. *See id.; Von Hillman,* 19 Kan. App.2d at 377, 869 P.2d at 249 (estoppel may not be invoked to create an insurance contract where there is no valid acceptance of automobile carrier's renewal offer). Here, the policy provided:

> **Nonrenewal By Insured**—When **we** offer to renew or continue this policy and **you** do not accept it, coverage will stop at the end of the current policy period. **Your** failure to pay the renewal premium by the date due indicates **your** rejection of **our** renewal offer.

Exh. A to Pls.' State Court Petition (Doc. # 6), at 4 (emphasis in original). Mr. Unruh clearly rejected Prudential's renewal offer by failing to pay the premium by the due date. Mr. Unruh's subsequent payment constituted a counteroffer which Prudential did not accept because it promptly issued a refund check and statement that the policy would not be reinstated. *See* Exh. D to Pls.' Petition; *see also Auto Club Ins. Ass'n v. Dennie,* 188 Mich.App. 634, 470 N.W.2d 409, 411 (1991) (temporary retention of late premium payment does not bind carrier); *Hartford Fire Ins. Co. v. Western Fire Ins. Co.,* 226 Kan. 197, 203, 597 P.2d 622, 627 (1979) (renewal contract requires mutual assent of the parties and meeting of the minds on all essential terms). Coverage for accidents after July 18 was specifically excluded by Mr. Unruh's policy. Accordingly, Kansas law does not permit reinstatement of the lapsed policy or creation of a new policy by estoppel. *See Von Hillman,* 19 Kan. App.2d at 377, 869 P.2d at 249; *Western Food,* 10 Kan.App.2d at 381, 699 P.2d at 584.

For these reasons, the court grants Prudential's motion for summary judgment on plaintiffs' equitable estoppel claim.

### B. Factual Support For Plaintiffs' Equitable Estoppel Claim.

▆▆ Even if equitable estoppel could be invoked to reinstate a policy after it has lapsed, plaintiffs have not presented sufficient evidence to support such a claim. To raise an equitable estoppel claim, plaintiffs must show that (1) Prudential's acts or representations induced Mr. Unruh to believe that insurance coverage was in effect at the time of the accident; (2) Mr. Unruh rightfully relied and acted on that belief; and (3) Mr. Unruh was damaged as a result. *See Federal Kemper Life Assur. Co. v. Ellis,* 28 F.3d 1033, 1041 (10th Cir. 1994); *Tucker v. Hugoton Energy Corp.,* 253 Kan. 373, 383, 855 P.2d 929, 937 (1993). The facts giving rise to estoppel must be unambiguous and subject to only one con-

struction. *See id.; Gillespie v. Seymour,* 250 Kan. 123, 129–30, 823 P.2d 782, 788–89 (1991).

■ Plaintiffs have failed to show that Mr. Unruh actually was induced by Prudential's prior acts to believe he had insurance coverage. In particular, plaintiffs have not presented any evidence that Mr. Unruh assumed he had coverage because Prudential had reinstated his policy in 1995. While the court recognizes the difficulty in obtaining this evidence, as Mr. Unruh died in the accident, such evidence is necessary to meet an essential element of estoppel. Plaintiffs apparently argue that Mr. Unruh relied on Prudential's past conduct because he did not express any concern to family members regarding a lack of coverage in July and August 1996. Plaintiffs ignore that Mr. Unruh clearly did not have insurance coverage between July 18, 1996 and August 8, 1996, the date Prudential received his check, yet he expressed no concern regarding coverage during that period. Thus, Mr. Unruh's lack of expressed concern after August 8, 1996 is insufficient to establish that he relied on Prudential's treatment of his 1995 payment or the cashing of his check in August 1996.

Plaintiffs further point to the date of Mr. Unruh's bank statement as evidence of his reliance. Plaintiffs maintain that Mr. Unruh may have known that Prudential had cashed his check. The American Bank statement is for the period from July 9, 1996 to August 13, 1996. No record evidence establishes, however, that the bank statement arrived at Mr. Unruh's home before his death or that Mr. Unruh read the statement.

■ Even if Mr. Unruh had read the bank statement, he could not reasonably rely on the cashing of his check alone as establishing that his policy had been reinstated. First, Prudential had reinstated a lapsed policy for Mr. Unruh on only one prior occasion. One occasion simply does not create a custom or practice, for it may be the exception. Second, Prudential reinstated Mr. Unruh's policy in 1995 because

his payment was only seven days late. Mr. Unruh could not justifiably rely on Prudential's treatment of the 1995 payment to expect that his policy would be reinstated in 1996 if his payment was 21 days late. *See Shepard v. United States Fidelity & Guar. Co.,* 210 Kan. 652, 653, 504 P.2d 228, 229 (1972) (insurance carrier's practice of sending notice to the policyholder that policy was expiring is an act of courtesy, and is insufficient to give rise to estoppel). Similarly, Prudential's acceptance of late installment payments during the term of the policy did not estop it from enforcing the express policy provisions regarding renewal. *See Sereno v. Lumbermens Mut. Cas. Co.,* 132 Ariz. 546, 647 P.2d 1144, 1146 (1982) (acceptance of late installment payments on existing policy does not estop carrier from denying renewal of policy because of late renewal payment). Finally, Prudential issued a refund and notice that the policy would not be reinstated within three business days of cashing Mr. Unruh's check. *See Dennie,* 470 N.W.2d at 411 (refund within five days reasonable); *DeTemple v. Southern Ins. Co.,* 154 Ariz. 79, 740 P.2d 500, 503 (1987) (notice of nonacceptance within thirteen days reasonable); *Harris v. Criterion Ins. Co.,* 222 Va. 496, 281 S.E.2d 878, 882 (1981) (refund within twelve days reasonable). In sum, the evidence viewed in the light most favorable to plaintiffs is insufficient to show that Mr. Unruh rightfully relied on Prudential's previous conduct.

Plaintiffs rely primarily on *Howard v. Motorists Mut. Ins. Co.,* 955 S.W.2d 525 (Ky.1997). In *Howard,* the Kentucky Supreme Court held that the carrier was estopped to deny coverage where it accepted a renewal payment eighteen days after a policy had lapsed and did not inform the policyholder of the conditional nature of the acceptance. *See id.* at 528–29. The carrier issued a refund to the policyholder twelve days after it accepted the premium payment. *See id.* at 526.

Even if the court assumes that Kansas courts would adopt the reasoning of *How-*

*ard,* the case is distinguishable on several key grounds. First, Mr. Unruh had previously sent a payment seven days late and received reinstated coverage, but his payment in 1996 was 21 days late. In *Howard,* the policyholder's previous payment was 28 days late, compared to the disputed payment which was only eighteen days late (ten days fewer than previous payment). *See id.* at 527. Second, in *Howard,* the carrier had accepted payments after a lapse on two prior occasions, compared to one prior occasion in this action. Third, the carrier in *Howard* issued the policyholder a receipt with a policy number. *See id.* at 526. Plaintiffs have presented no comparable evidence in this case. Fourth, in *Howard,* the policyholder testified that she received the canceled check, she assumed that she had coverage, and that she would not have driven if she had known that there was no coverage. *See id.* at 528. In contrast, plaintiffs have presented no evidence that Mr. Unruh assumed he had coverage because Prudential had reinstated his policy in 1995 and cashed the check in August 1996. Finally, the carrier in *Howard* waited twelve days before issuing a refund, while Prudential waited only three business days.

While the above result may seem harsh, it is mandated by Kansas law. Policyholders cannot reasonably assume that a carrier will reinstate coverage at any time because the carrier did so on one prior occasion after receiving a payment five business days after the due date. For all of the above reasons, the court finds that Prudential is entitled to judgment as a matter of law on plaintiffs' equitable estoppel claim. Given that Mr. Unruh did not have insurance coverage for the August 18, 1996 accident, the claims of Intervenors are also dismissed.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion for summary judgment (Doc. # 46) is granted.

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment (Doc. # 57) is denied.

IT IS FURTHER ORDERED that Intervenors' claims are dismissed.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**